**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER D. SHURLAND, individually and as the representative of a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> BACCI CAFÉ & PIZZERIA ON OGDEN, INC. and DOES 1-10, <br><br> Defendant. | ) ) ) ) ) ) No. 08 CV 2259 ) ) Judge Pallmeyer ) ) ) ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

Plaintiff submits this brief in support of his Motion for Class Certification pursuant to Fed.R.Civ.P 23(a), 23(b)(3) and 23(g).

**INTRODUCTION**

This case involves alleged violations of the Fair Credit Reporting Act and is ideal for certification. The Appellate Court forcefully set forth the reasons supporting class certification in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) (reversing district court's denial of class certification).

Since *Murray,* numerous trial courts have certified FCRA cases involving FACTA ("Fair and Accurate Transactions Act of 2003") violations. For example, in a similar FACTA case, the court certified the class finding that, "The class definition (and plaintiff's theory of this case) is centered on defendant's standardized conduct: failure to truncate credit card numbers …" *Harris v. Circuit City Stores, Inc.*, 07 C 2512, 2008 WL 400862 at *6 (N.D.Ill. Feb. 7,

2008) (Schenkier, J.)(Exhibit A).  *E.g., Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) (Castillo, J.); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008) (Castillo, J.); and *Troy v. Red Lantern Inn, Inc.*, 07 C 2418, 2007 WL 4293014 (N.D.Ill. Dec. 4, 2007) (Aspen, J.) (Exhibit B).

## FACTS

Plaintiff filed this class action under the Fair Credit Reporting Act ("FCRA") as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), contending that defendant violated a provision designed to prevent identity theft.  15 U.S.C. § 1681c(g) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."[1]  Defendant has admitted that it "is a person that accepts credit or debit cards for the transaction of business."  *See* Defendant's Responses to Plaintiff's First Request for Defendant's Admissions" (attached hereto as Exhibit C).

FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and for all transactions.  15 U.S.C. §1681c(g)(3)(A).  When a plaintiff can establish that the defendant "willfully" failed to comply with the FACTA requirements, then he or she can recover

---

[1]     15 U.S.C. § 1681c(g)(3)(A) states that "with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions  that is in use before January 1, 2005" must be compliant "3 years after December 4, 2003"["old machines").   Thus, for all "old machines" "in use before January 1, 2005" any non-compliant transaction on or after December 5, 2006 is illegal.

2

actual or statutory damages under the statute. 15 U.S.C. § 1681n(a) ("Any person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable....") (emphasis added). The consumer may get either actual damages or "damages of not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a)(1)(A).

The primary question in this case is whether Defendant's actions amount to a "willful" failure to comply with FACTA truncation requirements. There are allegations and evidence showing that Defendant had actual or constructive knowledge and was recklessly violating FACTA's truncation requirements by failing to take appropriate and prudent actions to prevent truncation violations. *See* Class Action Complaint, ¶¶ 13, 22, 36-60, 72-74, 77 (attached hereto as Exhibit D). Deposition testimony, records and other evidence show that, as early as the beginning of 2005, Defendant had actual knowledge provided by National Translink Corporation ("Translink")—Defendant's credit card processor—that it was at risk for potential FACTA violations and should take appropriate actions to prevent such.

Plaintiff deposed Translink's Executive Vice President, James J. Tracy regarding this matter. *See* Discovery Deposition of James J. Tracy, December 10, 2008 (hereinafter "Tracy Depo.") (attached hereto as Exhibit E). Tracy testified that Translink "is an independent sales organization that sells credit card processing services and terminals to small business owners." Tracy Depo. 6:21-24. Translink "has a sales staff that provides the credit card machines and sells on behalf of a bank the services that go in the credit card machines to

the small business owners." Tracy Depo. 7:4-9.[2]

Defendant's 6920 West Ogden location began as a customer of Translink on may 11, 2004. Tracy Depo. 43:18-24; 44:1-4. In approximately early 2005, Translink alerted and warned its customers, such as Defendant, of FACTA's truncation requirements. Tracy Depo. 26:4-7. Tracy testified:

> We notified customers on their [monthly billing] statements in approximately early 2005 that they would have to be certain that their terminals were properly programmed. If not, they could contact us or the processing center and we could direct them to the place where they could get help.

Tracy Depo. 27:12-18. The warnings were sent in "billing statements" to "every billing address in [Translink's] system at that time." Tracy Depo. 28:17-19; 29:6-9; 30:11-17; 46:1-8 (including Defendant's address). Mr. Tracy's recollection is that the notification to its customers, such as Defendant, was worded: "Attention all customers, please take a look at your credit card receipt to make sure the customer card number is not appearing on their copy. If this is occurring, please contact us immediately at these numbers." Tracy Depo. 30:21-14, 31:1-3. According to Tracy, Defendant "certainly would have

---

[2] Translink "act[s] as a go-between between the small business owner and the processing centers and the banks which settle the funds every day. So in ordinary terms when the credit card goes through the machine, it contacts a processing center, that processing center approves the transaction and if that transaction is approved, a bank needs to settle those funds. … There is an issuer that issued the credit card to the cardholder and there is an … acquiring bank. That's the bank that [Translink is] the sales organization for that settles the transactions, so the bank that we work for gives the small business owner their money. They contact VISA and Mastercard. Visa and Mastercard goes to the issuer who gave the [customer] the card and the issuing bank gives the money to the acquiring bank." Tracy Depo. 8:5-13; 9:10-19. Translink works for Merrick Bank, a division of a company named CardWorks. *Id.* 10:8-14.

received that notification...." Tracy Depo. 42:24, 43:1.

After the initial notice, Translink gave additional special notification in June 2006 to certain "high risk" type customers, such as Defendant, that were using an older outdated credit card processing machine known as a "Hypercom T7P." Tracy Depo. 33:10-11; 36:7-8. Mr. Tracy testified:

> Q. After that first [early 2005] notice, what is the next thing you recall Translink doing about truncation requirements?
> A. We put a list together of approximately 200 businesses that we felt may be subject to truncation issues and we called all of those customers.
> Q. How did Translink determine which customers would probably be at risk with respect to these [FACTA] requirements?
> A. Based on the type of credit card machine that we knew they had in our system. We did not know for sure if it would be good or bad. We felt it important to contact them, make them aware that they had some responsibility there.
> ...
> Q. Do you know from your review and preparation what type of machine they had?
> A. Yes.
> Q. Did they have one of the machines that would have ... qualified them for these calls that were made in 2005?
> A. Yes.
> ...
> Q. What type of machine was it?
> A. A Hypercom, T7P ... it was a machine that came out many years before the truncation rules came out, the early applications did not apply, did not truncate the number.
> ...
> Q. When you called the customers with this old [Hypercom T7P] machine, what did ... Translink instruct them to do....?
> A. We contacted them and let them know to make sure that it was properly truncating the number and we gave them a telephone number in Arizon to contact the processing center to get their machine reprogrammed if it wasn't truncating the credit card numbers.

Tracy Depo. 32:2-17, 23-24; 33:1-5, 10-11, 17-20; 34:5-15.

Translink customer representative Doug Porch followed up with

5

Defendant regarding truncation on April 28, 2006, and July 13, 2006. Tracy Depo. pp. 49:2-5, 50:1-10; 51:5-15; 53:3-11, 16-24; 54:1-24; 55:1-2, 14-24; 56:1-12 and Exhibit 3 attached thereto. *See also* Porch Depo. 100:17-24, 101:1-2, 5-10; 108-114; 117:9-22 (attached hereto as Exhibit F).

Translink's records show Defendant's FACTA violations:[3]

| Month and Year | Number of Violations |
|---|---|
| December 5-31, 2006 | 381 |
| January 2007 | 437 |
| February 2007 | 476 |
| March 2007 | 632 |
| April 2007 | 564 |
| May 2007 | 608 |
| June 2007 | 640 |
| July 2007 | 653 |
| August 2007 | 644 |
| September 2007 | 625 |
| October 2007 | 699 |
| **Total** | 6,359 |

## ARGUMENT

Class actions encourage individuals—who might otherwise lack incentive to file individual actions because their damages are limited—to join with others in a single action to vindicate their rights. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940); *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985) ("Class actions … permit the plaintiffs to pool claims which would be uneconomical to

---

[3]  Plaintiff has obtained detailed records containing information related to all relevant transactions indicating FACTA violations. Plaintiff has not included these detailed records in this brief to protect the privacy of the persons involved in the transactions and their private credit card information. However, at the Court's request, Plaintiff will provide this information under seal.

litigate individually. [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Such cases aggregate "the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977).

The Appellate Court's decision in *Murray* supports class certification in this case. In pertinent part, *Murray* held that:

1. Whether a document complies with a statute "may be resolved for a class as a whole." *Id.* at 956.

2. The class action procedure "was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Id.* at 953.

3. Statutory damages provide relief for actual losses that are small and hard to quantify, without proof of injury. *Id.*

Many courts within this District have certified classes involving FACTA or FCRA statutory damage claims. *See Redmon*, 249 F.R.D. 290 (N.D.Ill. 2008) (FACTA case); *Matthews*, 248 F.R.D. 210 (N.D.Ill. 2008) (FACTA case); *Harris*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (FACTA case); *Troy*, 2007 WL 4293014 (N.D.Ill. Dec. 4, 2007) (FACTA case); *Larson v. Capital One Auto Fin., Inc.*, 06 C 1174, 2007 WL 704473 (N.D. Ill., Mar. 5, 2007) (Kennelly, J.) (Exhibit G); *Kudlicki v. Capital One Auto Fin.*, 241 F.R.D. 603 (N.D. Ill., Nov. 2, 2006) (Bucklo, J.); *Thomas v. Capital One Auto Finance, Inc.*, 06 C 463, 2006 WL 3065498 (N.D. Ill., Oct. 24, 2006) (Lefkow, J.) (Exhibit H); *Pavone v. Aegis Lending Corp.*, 05 C 5129, 2006 WL 2536632 (N.D. Ill., Aug. 31, 2006) (Aspen,

7

J.) (Exhibit I); *Murray v. IndyMac Bank,* 04 C 7669, 2006 WL 2263982 (N.D. Ill., Aug. 7, 2006) (Der-Yeghiayan, J.) (Exhibit J); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) (Castillo, J.); *Murray v. Sunrise Chevrolet, Inc.*, 04 C 7668, 2006 WL 862886 (N.D. Ill., Mar. 30, 2006) (Coar, J.) (Exhibit K); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295 (N.D. Ill. 2005) (Castillo, J.); *Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464 (N.D. Ill. 2006) (Kennelly, J.); *Murray v. E*Trade Fin. Corp.*, 204 F.R.D. 392 (N.D. Ill. 2006) (Castillo, J.); *Murray v. Cingular Wireless II, LLC*, 242 F.R.D. 415 (N.D. Ill.2005) (Manning, J.); and *Sampson v. Ridge Chrysler*, 03 C 1396, 2004 WL 725471 (N.D. Ill., Apr. 1, 2004), later opinion, 2004 WL 1588280 (N.D. Ill., July 1, 2004) (Zagel, J.) (Exhibit L).

**A.      Standard For Class Certification.**

To achieve class certification, the plaintiff must demonstrate that Rule 23(a)'s four prerequisites are satisfied:  (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  To proceed with a class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Additionally,

pursuant to Fed. R. Civ. P. 23(g) the court must appoint class counsel.

**B.    Proposed Class Definition.**

Plaintiff proposes the following class definition:

> All persons to whom Defendant provided an electronically-printed receipt at the point of a sale or transaction from December 5, 2006 through November 2007 displaying more than the last five digits of the purchaser's credit card or debit card number.

**C.    Numerosity.**

To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "When the class is large, numbers alone are dispositive...." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers at least 40, joinder is generally considered impracticable. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (Castillo, J.). Because this case involves 6,359 FACTA violations, the numerosity requirement is satisfied.

**D.    Commonality.**

Rule 23(a)'s second requirement is "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "commonality" requirement is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The requirement is usually met in cases where "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Id.* (internal citations omitted). Cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. *Halverson*

9

*v. Convenient Food Mart, Inc.*, 69 F.R.D. 331 (N.D.Ill. 1974). This is true even though the nature and amount of damages may differ among the members of the class. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D.Ill. 1989).

Defendant engaged in standardized conduct involving a common nucleus of operative facts. The case involves common fact questions about Defendant's FACTA violations and common legal questions under both the FRA and FACTA, such as:

1. Whether Defendant printed 6,359 sales or transaction receipts violated FACTA;

2. When Defendant put its machines or hard drives in service;

3. Whether Defendant's acts or omissions were "willful" (i.e. knowing or reckless) under FACTA; and

4. What amount of statutory damages the Court should order Defendant to pay.

Defendant's alleged failure to comply with FACTA is the same for each person who received a noncompliant receipt; thus, each class member has the same claim. *Murray* held that this sort of question does not require any individualized inquiry. Accordingly, whether noncompliant receipts were provided and the FACTA violations were willful depends on facts involving Defendant's activities, and not the activities of Plaintiff or the class members. Therefore, Rule 23(a)(2)'s "commonality" requirement is satisfied.

**E.     Typicality.**

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event

or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

In this case, typicality is inherent in the class definition. Each of the class members, including Plaintiff, was subjected to the same illegal conduct. Further, each class member's claim is based on the same legal theory. Therefore, Rule 23(a)(3)'s "typicality" requirement is satisfied.

**F.** **Adequacy of Representation.**

  **1.** **Rule 23(a)(4) Adequacy Requirement**

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The burden of showing sufficient interest is relatively modest." *Redmon*, 2008 WL 656075 at *4. The "adequacy" requirement is met when the class representative's interests are not antagonistic to or in conflict with those of the other class members. *See Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Courts look for two things: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests antagonistic to those of the other class members. "As long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyer's advice, there is no reason that he may not delegate further factual and legal investigation to his attorneys." *Nielsen v. Dickerson*, No. 98-5909, 1999 WL 350649, *7 (N.D. Ill. May 20, 1999) (Kocoras, J.) (quoting

11

Case: 1:08-cv-02259 Document #: 41 Filed: 02/26/09 Page 12 of 15 PageID #:207

*Kaplan v. Pomerantz,* 131 F.R.D. 118, 122 (N.D. Ill.1990)) (Exhibit N).

Plaintiff understands the obligations of a class representative, the nature of the claims, is involved in the litigation, and has an interest in representing the class and enforcing FACTA. Plaintiff and the other class members all seek statutory damages under the FCRA. Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests. There is no antagonism between the interests of Plaintiff and those of the other class members, which is the key factor to determine whether a plaintiff is an adequate representative. Rule 23(a)(4)'s "adequacy" requirement is satisfied.

### 2. Rule 23(g) Class Counsel Adequacy Requirement.

Class counsel's adequacy is determined by four factors: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff's counsel have thoroughly discovered the ins-and-outs of Defendant's alleged FACTA violations. Plaintiff's counsel are experienced class action lawyers. Exhibits O and P. They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and the class members. *E.g., Hinman v. M and M Rental Center, Inc.,* 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.). Further, Plaintiff's counsel have successfully negotiated class-wide settlements. *E.g., CE Design, Ltd. v. Exterior Systems, Inc.,* 07 C 66 (N.D. Ill.) (Darrah, J.) (TCPA

case in which each class member who did not opt out received $106). Plaintiff's counsel will continue to commit adequate resources (staffing and monetary) to ensure that the class is properly represented.

**G.     Predominance.**

Rule 23(b)(3) requires that Plaintiff show that common questions of law or fact predominate over any individual questions. For the reasons discussed above regarding commonality and typicality, there is no reason to believe that any individual question will predominate over the common questions in this litigation. Common legal issues predominate because the class members' claims arise under the same federal statute, FCRA and its concomitant FACTA amendments. Common fact issues predominate because the class members' claims are focused on Defendant's conduct of providing non-compliant receipts to Plaintiff and thousands of other customers from December 5, 2006 to November 2007.

**H.     Superiority.**

Rule 23(b)(3) requires that a class action be the superior method of adjudicating the claims at issue. In *Murray,* the Appellate Court held that cases like this one, where thousands of people have exactly the same claim, are well-suited for class resolution:

> [Rule] 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. *See, e.g., Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344-45 (7th Cir. 1997). Reliance on federal law avoids the complications that can plague multi-state classes under state law, *see In re Bridgestone/Firestone, Inc., Tires Products Liability Litig.,* 288 F.3d 1012 (7th Cir. 2002), and society may gain from the deterrent effect of financial awards. The practical

13

alternative to class litigation is punitive damages, not a fusillade of small-stakes claims. *See Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003). [*Murray*, 434 F.3d at 953.]

Generally speaking, efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D.Ill. 1972). The court determines the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D.Ill. 1992). It is proper for a court, in deciding the "best" available method, to consider the "[i]nability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). The fact there is a large number of class members "is no argument at all" against certification. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004):

> The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30 ... The realistic alternative to a class action is not 17 million suits, but zero individual suits, as only a lunatic or fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all." *Id.*

Here, there is no better method available for the adjudication of the claims. The vast majority of consumers are undoubtedly unaware that their rights were violated and their identity compromised. Furthermore, the filing of

14

hundreds, or thousands, of cases against Defendant would be unduly burdensome to the courts. Judicial efficiency would be greatly promoted through the adjudication of identical claims through a single proceeding. From the perspective of the court system and the class members, a class action is a superior means of resolving the issues regarding Defendant's FACTA violations, especially when compared to individual actions, because the maximum recovery for each class member is only $1,000. Allowing this class to proceed as a class action will be an efficient use of judicial resources and will be superior to individual lawsuits. Rule 23(b)(3)'s "superiority" requirement is satisfied.

## CONCLUSION

The proposed class meets the requirements of Rules 23(a), (b)(3) and (g). Therefore, Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

February 26, 2009.                           Respectfully submitted,


                                        /s  Phillip A. Bock
                                        One of Plaintiff's attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | Tod A. Lewis |
| ANDERSON + WANCA | BOCK & HATCH, LLC |
| 3701 Algonquin Road, Suite 760 | 134 N. La Salle St., Suite 1000 |
| Rolling Meadows, IL  60008 | Chicago, IL  60602 |
| Telephone:  847/368-1500 | Telephone:  312/658-5500 |