IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER D. SHURLAND, individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> BACCI CAFÉ & PIZZERIA ON ODGEN, INC. and DOES 1 – 10, <br><br> Defendants. | No. 08 CV 2259 <br><br> Judge Pallmeyer |

**PLAINTIFF'S OPPOSITION TO DEFENDANT, BACCI CAFÉ & PIZZERIA ON OGDEN, INC.'S SUMMARY JUDGMENT MOTION**

Plaintiff, Christopher D. Shurland responds to Defendant, Bacci Café & Pizzeria on Ogden, Inc.'s Motion for Summary Judgment as follows:

**INTRODUCTION**

In its motion for summary judgment, Defendant acknowledges that it violated the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") when it issued a credit card receipt to Plaintiff on August 11, 2007, containing the entire credit card number and also the expiration date. Nevertheless, Defendant argues that this Court should enter summary judgment in Defendant's favor because Defendant contends that it did not act "willfully" in violating the statute. Defendant's argument is that it did not know about the FCRA's truncation requirements in August 2007. For several reasons, the Court should reject Defendant's "ostrich" defense and deny the motion.

First, the United States Supreme Court has held that a defendant need not know what the FCRA says in order to violate it willfully. Second, Defendant's argument is based on half-truths,

because specific testimony in this case indicates that Defendant was put on notice about the truncation requirements long before Defendant issued a non-compliant credit card receipt to Plaintiff. Therefore, Defendant acted "willfully" despite Defendant's claim of ignorance. Finally, case law holds that whether Defendant willfully violated the FCRA is a question of fact for the ultimate trier of fact. The Court should deny Defendant's motion for summary judgment.

## FACTUAL BACKGROUND

Defendant is an Illinois corporation located in Berwyn, Illinois. (Answer to Complaint at ¶ 19)[1]. The owner is Vincent DiDiana. (V. DiDiana Dep. at p 9). Vincent DiDiana also is an owner of another Baci Café located in Melrose Park, Illinois. (V. DiDiana Dep. at p. 10). Mr. DiDiana has been Defendant's owner for more than 10 years. (V. DiDiana Dep. at p. 11). The DiDiana family owns more than half of the Bacci Café's located throughout the Chicago area. (V. DiDiana Dep. at p. 61).

In May 2004, Defendant obtained a credit card processing machine—a Hypercom T7P— for use in its restaurant. (SOAF at ¶ 8, Tracy Dep. at p. 33, V. DiDiana Dep. at p. 22). In order to activate and use the Hypercom T7P, Defendant contracted with National Translink Corp, an independent sales organization that sells credit card processing services and terminals. (SOAF at ¶ 1, Tracy Dep. at p. 6).

In 2005, National Translink notified its customers, including Defendant, of the FCRA truncation requirements by detailing the new truncation requirement in a monthly billing notice. (SOAF at ¶ 4, Tracy Dep. at pp. 29, 89 – 90).

---

[1] Copies of the Deposition Transcripts referenced herein are attached to Plaintiff's 56.1 Statement of Additional Facts that Require Denial of Summary Judgment ("SOAF"). Tracy Dep is attached thereto as Exhibit A; Vincent DiDiana Dep as Exhibit B; Porch Dep as Exhibit C; and Carey Dep as Exhibit D.

In 2006, National Translink assembled a list of approximately 200 businesses that it viewed as at risk of violating the FCRA's truncation requirements, based on the type of processing machines each business was using. (SOAF at ¶ 6 – 7, Tracy Dep. at pp. 32 and 36). Defendant was on that list of 200 businesses because the Hypercom T7P was one of the processing machines likely to be in violation of the FCRA's truncation requirements. (SOAF at ¶ 8, Tracy Dep. at p. 22). On or about April 28, 2006, National Translink called Defendant, spoke with a representative of Defendant, and informed Defendant of the FCRA's truncation requirement. (SOAF at ¶¶ 10 – 17, Porch Dep. at pp. 10, 11, 53 – 58, 65, Porch Exhibit # 4 at p. 47). Later, National Translink called Defendant on yet another occasion and informed Defendant of the FCRA's truncation requirement. (SOAF at ¶ 35, Carey Dep. at p. 79, 80). On August 11, 2007, Plaintiff received from Defendant a computer-generated cash register receipt displaying Plaintiff's entire credit card number and expiration date. (Class Action Complaint at ¶ 22).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. Rule 56(c). At the summary judgment stage, it is not the Court's function to weigh the evidence and decide on the merits, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Id*. at 255.

Courts that have addressed the issue of whether a defendant willfully violated the FCRA in a motion for summary judgment have uniformly denied the motion for summary judgment because whether a FCRA violation is "willful" is a matter for the ultimate trier of fact. *See, e.g., Whitfield v. Radian Guaranty Inc.*, 501 F.3d 262, 270-71 (3rd Cir. 2007) ("[W]hether it was [a reckless misreading of FCRA] is a factual issue, not a question of law" and it "cannot be decided ... by [this] Court as a matter of law."); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D.Cal. 2007) (willfulness under FCRA is generally a question of fact for the jury); *Lenox v. Equifax Info. Serv. LLC*, No. 05-01501-AA, 2007 WL 1406914 at *6 (D.Or. May 7, 2007) ("[W]hether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact.").

## ARGUMENT

"Congress enacted FCRA in 1970 to . . . protect consumer privacy." *Safeco Ins. Co. of Am. v. GEICO Gen. Ins. Co.*, 551 U.S. 47, 127 S.Ct. 2201, 2205 (2007) *citing* 15 U.S.C. § 1681. The truncation requirement of the FCRA states, "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). "The plain language of the statute has only one reasonable meaning: It 'unambiguously prohibits a person from printing more than the last five digits of a credit card on a receipt from printing the expiration date on a receipt.'" *Kubas v. Standard Parking Corp.*, 594 F.Supp.2d 1029, 1032 (N.D.Ill. 2009)(Castillo, J.) *quoting Troy v. Home Run Inn, Inc.*, No. 07-C4331, 2008 WL 1766526 at *3 (N.D.Ill. April 4, 2008)(Kennelly, J.). Additionally, if a violation of the FCRA is willful the consumer may have "actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." *Safeco Ins. Co.*

4

*of Am.*, 127 S.Ct. at 2206 *citing* §1691n(a).

The willfulness requirement of § 1681n is defined to include both knowing and reckless conduct. *Id*. at 2208 – 09. The common law definition of recklessness is generally understood to be an action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. at 2215 *quoting Farmer v. Brennan*, 511 U.S. 825, 836 114 S.CT. 1970 (1994). The Supreme Court has determined that, for FCRA, reckless means:

> [A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. [*Safeco Ins. Co. of America*, 127 S.Ct. at 2215].

In other words, a company acts reckless under the FCRA when the action: (1) is a violation of the FCRA under a reasonable reading of the FCRA's terms; and (2) the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id*.

Courts have interpreted *Safeco* as stating that reckless under the FCRA is "something more than negligence but less than knowledge of the law's requirements." *Kubas v. Standard Parking Corp.*, 594 F. Supp. 2d 1029, 1032 (N.D.Ill. 2009)(Castillo, J.), *quoting Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719, 726 (7th Cir. 2008).

### A. Defendant Can Be Found To Have Willfully Violated The FCRA Even If The Ultimate Trier Of Fact Determines That Defendant Did Not Have Actual Knowledge Of The FCRA In August 2007.

Defendant's entire motion rests upon Defendant's ostrich-like posture that it could not have willfully violated the FCRA because Defendant says it did not know about the truncation requirements under the FCRA. Defendant is wrong. Ignorance is not a valid defense here, nor is

5

a conscious avoidance of the FCRA.[2] Pursuant to *Safeco*, actual knowledge of the FCRA is not needed for a willful violation of the FCRA.

Here, the facts show that, under *Safeco*, Defendant willfully violated the FCRA. First, the plain language of the FCRA's truncation requirements has only one reasonable meaning. "It unambiguously prohibits a person from printing more than the last five digits of a credit card on a receipt from printing the expiration date on a receipt." *Kubas*, 594 F.Supp.2d at 1032. As a result, the first prong under *Safeco* is met.

The second prong under *Safeco* is met because Defendant's risk of violating the FCRA's truncation requirement was greater than the risk associated with Defendant's careless conduct of refusing to learn what the FCRA's truncation requirement entailed. For example, the record shows that National Translink put Defendant on notice on at least three separate occasions: (1) in 2005, National Translink notified Defendant of the FCRA's truncation requirement by including that information in monthly billing statements (SOAF ¶ 3, Tracy Dep: pp 27 – 29); (2) On or about April 28, 2006, National Translink called and spoke with a representative of Defendant about the FCRA's truncation requirement (SOAF ¶¶ 7 – 19, Porch Dep: 53 – 58, 65, Porch Exhibit #4 at p. 47); and (3) National Translink called Defendant again to inquire whether Defendant's processing machine was truncating the credit card account numbers (SOAF ¶¶ 24 – 35, Carey Dep: 75 – 80, Porch Exhibit #5 at p. 775).

Defendant's response to National Translink's testimony is to say that Defendant does not recall receiving the notice National Translink sent to Defendant in 2005 in the monthly billing

---

[2] Defendant's motion for summary judgment should also be denied because conscious avoidance is evidence of guilty knowledge. *See U.S. v. Griggs*, 2009 WL 1767269 at * 1 (7th Cir. June 24, 2009). National Translink did everything within reason to educate Defendant of the FCRA's truncation requirement. Defendant's refusal to receive this information is clearly avoidance on Defendant's part.

statements. (Defendant's Statement of Material Facts at ¶ 30). Defendant also testified that no representatives of Defendant remember discussing the FCRA's truncation requirement with anybody at National Translink. (Defendant's Statement of Material Facts at ¶ 30).

Even if the trier of fact ultimately understands Defendant's testimony to mean that Defendant did not have knowledge of the FCRA's truncation requirements, Defendant's steadfast refusal to listen to National Translink certainly shows that Defendant was reckless and therefore willful. Courts have held even the most unsophisticated consumer responsible for reading a notice coming in the mail and attached to a billing statement. Certainly, it is reckless for Defendant – sophisticated owners operating at least two restaurants[3] – not to read the notice National Translink sent it with the billing statements. It is undisputed that National Translink had at least one telephone conversation with a representative of Defendant. Defendant's inability to recall that telephone conversation is further evidence of Defendant's recklessness. Defendant had the opportunity to learn about and comply with the FCRA's truncation requirement, but Defendant chose not to. Defendant's conduct was "reckless" causing Defendant to willfully violate the FCRA. *See Safeco*, *supra*.

    **B.**    **Specific Facts Can Prove Defendant Had Knowledge of the FCRA's Truncation Requirements Creating A Genuine Issue For Trial.**

The record indicates that Defendant willfully violated the FCRA even if it did not know of the FCRA truncation requirements before Plaintiff received the subject receipt. If the Court finds that Defendant must have actual knowledge of the FCRA in order to have violated the

---

[3] Defendant states that it is a "small, family-owned" company as an excuse to have ignored National Translink's many attempts to educate Defendant about the FCRA's truncation requirement. It cannot be ignored, however, that the owners of Defendant are successful and sophisticated entrepreneurs. Defendants have owned their own pizzerias for over 20 years. (V. DiDiana Dep. at 14). Moreover, Defendant's owners have successfully run this pizzeria for over ten years, while keeping the pizzeria open virtually 365 days a year. (V. DiDiana Dep. at 9 – 11, 25).

7

FCRA willfully, then Defendant still violated the FCRA as the record here indicates that Defendant had knowledge of the FCRA's truncation requirements. As stated above, the record shows specific facts regarding how National Translink put Defendant on notice of the FCRA truncation requirements on at least three separate occasions. Defendant argues that it does not recall receiving any information regarding the FCRA's truncation requirement prior to Plaintiff receiving the subject receipt. As a result, a question exists as to the willfulness of Defendant's conduct, which is a question of fact for the ultimate trier of fact in this case. *See*, *Whitfield*; *Edwards*; and *Lenox*, *supra*.

Defendant contends that National Translink never communicated the FCRA truncation requirements to them. However, the record indicates that Defendant is wrong. James Tracy, the executive vice president of National Translink Corporation notified Defendant of the FCRA's truncation requirements in 2005 when National Translink sent Defendant a notice in Defendant's billing statement. (SOAF at ¶¶ 3 – 4, Tracy Dep. at 5 – 7, 29 and 89 – 90). Additionally, on April 28, 2006, Douglas Porch, a former National Translink customer service representative, called Defendant, spoke to a representative of Defendant and informed Defendant of the FCRA's truncation requirements. (SOAF at ¶¶ 10 – 19, Porch Dep. at 10, 11, 53 – 58 and 65). Mr. Porch knows he spoke with someone on behalf of Defendant because of the detailed notes he took at the time he called Defendant. (SOAF at ¶¶ 16 and 17; Porch Dep. at 53 – 58, 65, Porch Exhibit #4). Finally, Noel Carey, a National Translink customer service representative, called Defendant to verify what kind of printer Defendant had and to see if their processing machine was truncated. (SOAF at ¶¶20 – 35; Carey Dep. at 8, 9, 14, 80, and Porch Exhibit #5).

With these specific facts, a trier of fact can ultimately hold that Defendant had actual knowledge of the FCRA's truncation requirement years before Plaintiff received the subject

receipt from Defendant. The Court should deny Defendant's motion for summary judgment.

## **CONCLUSION**

For all these reasons, the Court should deny Defendant's motion for summary judgment.

                        Respectfully submitted,

                        s/James M. Smith
                        One of Plaintiff's attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Jonathan E. Irwin | Tod A. Lewis |
| ANDERSON + WANCA | James M. Smith |
| 3701 Algonquin Road, Suite 760 | BOCK & HATCH, LLC |
| Rolling Meadows, IL  60008 | 134 N. LaSalle Street, Suite 1000 |
| Telephone:  847/368-1500 | Chicago, IL  60602 |
| | Telephone:  312/658-5500 |