IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER D. SHURLAND, ) <br> individually and as the representative ) <br> of a class of similarly-situated persons, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BACCI CAFÉ & PIZZERIA ON OGDEN ) <br> INC., and DOES 1-10, ) <br> ) <br> Defendants. ) <br> _____) <br> ) <br> BACCI CAFÉ & PIZZERIA ON OGDEN ) <br> INC., ) <br> ) <br> Third-Party Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NATIONAL TRANSLINK CORP. ) <br> ) <br> Third-Party Defendant. ) <br> Third-Party Defendant. ) | Case No. 08 CV 2259 <br><br> Judge Pallmeyer <br><br> Mag. Judge Brown |

**DEFENDANT, BACCI CAFÉ & PIZZERIA ON OGDEN, INC.'S,
REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56**

**NOW COMES** Defendant, BACCI CAFÉ & PIZZERIA ON OGDEN, INC., by and through its attorneys, Eric L. Samore, Molly A. Arranz, and Erin A. Walsh of SmithAmundsen LLC, and submits this Reply Memorandum in response to Plaintiff's Opposition to Defendant's Summary Judgment Motion (hereinafter, "Plaintiff's Response") and in further support of Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

I.  **INTRODUCTION.**

The uncontested facts of this case show that Bacci Café & Pizzeria ("Bacci") cannot be held liable to Plaintiff because the Plaintiff's complaint of wrongdoing against Defendant did not factually occur.  Plaintiff has alleged that Bacci "*recklessly violated*" the Fair and Accurate Transactions Act of 2003 ("FACTA") by providing credit or debit card receipts at the point of sale or transaction that contained more than the last five digits of the card number.  (Def.'s Statement of Facts ¶¶ 1, 6)(emphasis added.)  Yet, Plaintiff has not presented a genuine issue of material fact to support these allegations in opposition to Defendant's Motion.  First, when looking at their plain testimony, it is clear that no representative of National Translink has been able to verify that Bacci was, in fact, contacted regarding the requirements of truncation.  (*See* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶ 7.)  Second, and perhaps more decisively, it is undisputed by Plaintiff that Bacci received a replacement credit card terminal from National Translink, in July 2006, that contained downloaded files meant to include "truncation information."  (Pl.'s Resp. to Def.'s Statement of Material Undisputed Facts, ¶¶ 26-27.)  This intervening happening—a replacement credit card machine provided in July 2006 by National Translink—alone makes it impossible to find, reasonably, that Bacci willfully violated FACTA because Bacci started using a terminal that it believed was compliant with applicable rules, regulations or laws five months before the enforcement date of FACTA.  Therefore, summary judgment for Defendant is proper.

A.  **Testimony From National Translink's Representatives.**

In Plaintiff's Response, he refers to testimony provided by three employees of National Translink regarding their *general* recollections as to notifying their customers about the need to have credit card terminals print only truncated credit card receipts; however, Plaintiff ignores

their *specific* testimony as to Bacci. Their testimony regarding Bacci demonstrates that no National Translink representative can determine that Bacci was, in fact, contacted regarding the requirements of truncation pursuant to its inclusion on a list, marked as Porch Exh. 6. (*See* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶ 7.) This proof is consistent with Bacci's representatives' testimony that Bacci did not receive notification of truncation requirements from National Translink. (*See* Pl.'s Resp. to Def.'s Statement of Material Undisputed Facts, ¶ 30.)

Defendant agrees that National Translink's representative has testified that National Translink had created some sort of notice for inclusion in its billing statements in 2005 regarding truncation. (*See* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶¶ 3-4.) However, it is undisputed that this same representative, Jim Tracy, has testified: "I don't know that every customer received it." (*Id.*, ¶ 4.) In this same vein, Mr. Tracy did not know whether the notice went to all National Translink customers in early 2005, and there has been no evidence by Plaintiff that this notification was mailed to Defendant. (*See id.*)

Defendant also agrees that two National Translink customer service representatives, Douglas Porch and Noel Carey, were involved in that company's attempts to notify certain customers about truncation concerns. (*See id.*, ¶ 9.) Both have testified regarding their general practice in 2006. (*See id.*, ¶¶ 9-14, 20-30.) However, it is undisputed that Douglas Porch has specifically testified that: he did not recall having "any contact with any owners or employees of Bacci Café;" and, he did not recall "having had any conversations with anybody at Bacci Cafe regarding truncating of credit card numbers on their credit card machine." (*Id.*, ¶¶ 15, 17.) With the handwritten notes he made in April and July 2006, he was "speculating" as to what he did. (*Id.*, ¶ 19.) Similarly, Noel Carey has testified: he had no recollection of ever contacting any person or representative of Bacci regarding certain credit card information that needed to be

taken off; he has no recollection of having had any contact with anybody at Bacci regarding truncating of credit card numbers on receipts printed on Bacci's credit card terminal; and, his testimony regarding the listing of customers—Porch Exhibit 6—was merely his description of his general practice of contacting customers about truncation. (*Id.*, ¶¶ 30, 34.) As for any contention by Plaintiff as to what Mr. Porch or Mr. Carey said or did—based upon Jim Tracy's testimony—such factual assertions lack foundation and are mere hearsay. (*Id.*, ¶ 7.)

The Additional Facts submitted by Plaintiff do not controvert this clear testimony. Defendant does not deny that National Translink's representatives testified regarding their general practice in 2005 and 2006. However, when examining the testimony specific to notification of Bacci about truncation requirements, witnesses have been unequivocal: "[National Translink] [doesn't] know that every customer received" the notice meant for inclusion in billing statements; and, the customer service representatives, Mr. Porch and Mr. Carey, do not recall "having had any conversations with anybody at Bacci Cafe regarding truncating of credit card numbers on their credit card machine" or "any contact with anybody at Bacci Cafe & Pizzeria On Ogden regarding their truncating of credit card numbers on receipts printed at their credit card terminal." (*Id.*, ¶¶ 15, 17, 34.)

   **B.**  **The Key, Undisputed Fact: Bacci Received A Replacement Credit Card Terminal Five Months Prior To The Date Defendant Needed To Be FACTA Compliant, Which Machine Was Supposed To Be FACTA Compliant.**

Even if Plaintiff's mischaracterizations or generalizations regarding the testimony of National Translink's representatives' testimony are allowed, summary judgment for Defendant is still proper because of a key, undisputed fact: Bacci received a replacement credit card terminal from National Translink, in July 2006, that contained downloaded files upon which "truncation information" was supposed to be included. (Pl.'s Resp. to Def.'s Statement of Material

Undisputed Facts, ¶¶ 26-27.) The singular fact that Bacci was supposed to have been provided a FACTA compliant terminal—which is undisputed—makes it a factual impossibility that Bacci could have willfully or recklessly violated FACTA. Plaintiff *admits* that National Translink informed Bacci that it would be sending a replacement terminal; plaintiff *does not contest* that National Translink programmed a new terminal and sent it to Bacci; and, plaintiff *admits* that the files placed on the new terminal were supposed to include "truncation information." (*Id.*)(emphasis added.)

In other words, Defendant does not dispute that the "credit card terminal machine received by Bacci did not properly truncate" the credit card numbers on Plaintiff's receipt. (*Id.*, ¶ 28.) However, this fact is not inconsistent with the undisputed fact that the replacement machine was supposed to have all files—including the truncation program—on it at the time Bacci received it so that all Bacci had to do was take the terminal out of the box, plug it in, and "do sales." (*See id.*)

Given these undisputed facts, summary judgment for Defendant is proper.

**II. NO MATERIAL QUESTION OF FACT IS IN DISPUTE THAT PRECLUDES SUMMARY JUDGMENT FOR DEFENDANT AS NO WILLFUL VIOLATION OF FACTA HAS OCCURRED.**

When the undisputed facts of this case are considered as a whole, it is clear that Defendant could not have willfully or recklessly violated FACTA for two reasons: first, the specific testimony of National Translink representatives and Bacci representatives shows no actual contact with Bacci regarding truncation requirements—there was no notice to Bacci; and, second, plaintiff does not dispute that Defendant received a replacement credit card terminal, which was supposed to include "truncation information" from National Translink five (5) months

before the date FACTA was applicable to Defendant. Defendant cannot be found to have willfully violated the statute, and summary judgment for Defendant is proper.

### A. The Standard For Showing Defendant Willfully Violated FACTA.

The standard put forth in Plaintiff's Response as to what needs to be shown for willfulness is largely redundant of the standard provided in Defendant's Memorandum of Law in Support of its Summary Judgment Motion[1]. There is no dispute between the parties that in order for Plaintiff to prevail against Bacci, Plaintiff needs to prove that Bacci knowingly violated FACTA or recklessly disregarded the provisions of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2208-2209 (2007)(citations omitted)(*see also* Pl.'s Resp. at 4-5.) But to be reckless, Defendant's action must have entailed "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 2215. A company does not act in reckless disregard unless its action is not only a violation of the statute's terms but there is a showing that the company ran a risk of violating the law **substantially greater** than the risk associated with merely acting carelessly. *Id.* (emphasis added.) Willfulness is not shown by inadvertent errors or technical mistakes. *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 85 (4th Cir. 2009).

### B. The Actual Testimony In The Case Shows No Notification To Bacci Regarding FACTA's Truncation Requirement.

Beyond the fact that there is no dispute between the parties as to the legal standard to be applied, there also can be no dispute as to the actual testimony of witnesses in this case. What remains plain is that Plaintiff has not shown and cannot show that Bacci willfully violated the

---

[1] Plaintiff claims the issue of willfulness is a question of fact for the jury. This blanket statement is incorrect. As stated in the very cases Plaintiff cites in his Response: if the Court determines that a jury could not find that Bacci's conduct created a "risk [of violation] substantially greater than that which is necessary to make [its] conduct negligent," then a finding of summary judgment by the Court is proper. *Safeco*, 127 S. Ct. at 2215; *see also Edwards v. Toys "R" Us*, 527 F. Supp. 1197, 1210 (C.D. Cal. 2007)("summary judgment can properly be entered on the issue of willfulness" where a jury could not find willfulness on the facts presented.)

FACTA when the *specific testimony* of the National Translink representatives and Bacci representatives is considered. Therefore, under the standard proffered by both parties, Bacci is entitled to summary judgment.

In Plaintiff's Response, he asserts that there is an issue of material fact based upon broad strokes of what representatives of National Translink stated about their work generally. Such general assertions are improper. As stated in *Edwards*, "[c]onclusory, speculative testimony in affidavits and moving papers…is insufficient to raise genuine issues of fact and defeat summary judgment." 527 F. Supp. at 1207 (citations omitted.) The hollowness and speculative nature of Plaintiff's arguments is demonstrated when the actual, specific testimony of the witnesses in this case is read. Plaintiff makes the conclusory statement that "National Translink put Defendant on Notice on at least three separate occasions." (Pl.'s Resp. at 6-8.) Yet, Plaintiff provides no actual quotation of any representative of National Translink to provide foundation for this blanket assertion.

Instead, the representatives' specific testimony shows how Bacci was not notified about the truncation requirement of FACTA. Regarding the notification regarding truncation meant for monthly billing statements, National Translink's vice president has testified that "[he] [didn't] know that every customer received" it. (*Compare* Pl.'s Resp. at 6 *with* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶¶ 3-4.) Plaintiff has produced no document showing this notification was mailed to Bacci in a billing statement and received by Bacci. Regarding Plaintiff's claims that on April 28, 2006, National Translink called and spoke with Defendant and that "National Translink called Defendant again to inquire whether Defendant's processing machine was truncating," there is no support for these suppositions in the actual record. (Pl.'s Resp. at 6, 8.) Instead, Mr. Porch has plainly testified: "there were people we could not get a

hold of;" that he does not recall "any contact with any owners or employees of Bacci;" and, he does not recall "any conversations with anybody at Bacci Café regarding truncating of credit card numbers." (Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶¶ 7, 15.) As for Mr. Porch's handwritten notes in April 2006, Mr. Porch has never said that this meant that he "spoke with a representative of Defendant about the FCRA's truncation requirement;" instead, he recognized that his notes could mean he sent information to the processing center before contacting Bacci. (*Compare* Pl.'s Resp. at 6 *with* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶ 19.) With his handwritten notes in July 2006, he did not know whether he had any conversations with anybody at Bacci regarding the machine truncating—he was "speculating" as to what he did. (*Compare* Pl.'s Resp. at 6, 8 *with* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶ 19.) Mr. Carey has testified that he had no recollection of ever contacting anybody at Bacci regarding truncating of credit card numbers on receipts printed on Bacci's credit card terminal; and, his testimony regarding the listing of customers—Porch Exhibit 6—was his description of his practice, generally, in contacting customers about truncation. (*Compare* Pl.'s Resp. at 8 *with* Def.'s Resp. to Pl.'s Statement of Additional Facts, ¶ 34.)

Moreover, Plaintiff does not contest that representatives of Bacci have testified that they did not know of the FACTA until a customer alerted them to the problem in October 2007. (Pl.'s Resp. to Def.'s Statement of Material Undisputed Facts, ¶ 30.) Plaintiff also agrees that Bacci is a small, family-owned restaurant that does not belong to any business associations, does not read business journals or commercial journals, and did not receive or read any material provided by Visa or MasterCard regarding truncation. (*Id.*, ¶¶ 30-31.) Therefore, the actual testimony shows no "steadfast refusal to listen to National Translink" or other notification regarding FACTA. (Pl's Resp. at 7.) Plaintiff's attempts to extrapolate upon what he believes the testimony should

have been or what testimony of general procedures was does not stand up to the Defendant's representatives' sworn testimony and the explicit, sworn testimony of National Translink's representatives.

The actual testimony in this case shows that no contact had been made between National Translink and Defendant regarding the truncation requirement. Defendant does not deny that National Translink has testified through three of its representatives that it took certain steps for notifying its customers, *generally*, about the truncation requirements. But, these same representatives have testified under oath that they did not recall specifically notifying Bacci as to this requirement. Bacci's representatives' testimony bolsters this factual sequence of events. Given these undisputed facts, summary judgment for Bacci is proper.

  **C. It Is Uncontested That Defendant Received A Replacement Credit Card Terminal That Made It Factually Impossible For Defendant To Violate FACTA Willfully.**

Not only has there been no showing of material fact of "steadfast refusal to listen to National Translink" or "actual knowledge [of Bacci] of the FCRA," but National Translink sent a replacement credit card terminal to Bacci that should have been compliant with all applicable laws, rules and regulations prior to the date when Bacci was supposed to be FACTA compliant. (Pl.'s Resp. at 7-8; Def.'s Statement of Material Undisputed Facts, ¶ 29.) Bacci relied upon National Translink for an up-to-date and legally compliant credit card terminal, sent in July 2006, and by this fact alone, Bacci cannot reasonably be found to have willfully violated FACTA. It would be impossible for a jury to find Bacci's conduct rose to the requisite level of willfulness or recklessness as Bacci's use of a replacement credit card terminal that was supposed to have "truncation information" to print Plaintiff's receipt is not an act that risked violation of FACTA to a degree that is substantially greater than a negligent violation of the

statute. *See Safeco*, 127 S. Ct. at 2215.

Looking at the Statements of Fact submitted by Plaintiff and Defendant, this conclusion is required. It is undisputed that on July 14, 2006, National Translink programmed and sent a replacement terminal to Bacci and that this machine was intended to include "truncation information." (Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts ¶¶ 26-27.) Plaintiff admits that on July 14, 2006, Bacci complained of "sticky buttons" to National Translink and that on that same day, National Translink informed Bacci that it would be sending a replacement terminal. (*Id.*, ¶ 26.) Plaintiff admits that the facts show that National Translink programmed a new terminal and sent it to Bacci and that the files to be initialized on the new terminal on July 14, 2006 were supposed to include truncation information. (*Id.*, ¶ 27.) Plaintiff admits that Bacci was a member of National Translink's Merchant Club, which membership provided that Bacci could get a replacement terminal from National Translink. (*Id.*, ¶ 15.) Plaintiff does not deny that National Translink's customer representative believed that the credit card terminal would have worked with the truncation software uploaded so the customer simply had to take the terminal out of the box and plug it in to "do sales." (*See id.*, ¶ 28.) Plaintiff also does not specifically deny that Bacci began using the replacement credit card machine for its credit and debit card transactions starting in July 2006 with the belief that this terminal would meet all applicable legal requirements. (*See id.*, ¶ 29.)

The truncation software apparently did not work in printing Plaintiff's receipt in August 2007 and another customer's receipt in October 2007; but these facts are not inconsistent with the testimony of what Bacci's representative and National Translink's representatives thought was happening or should have happened when the replacement machine arrived at the restaurant. The testimony in the case shows that both National Translink and Bacci believed the replacement

credit card machine would be compliant with the applicable laws, rules and regulations. With these undisputed facts, it is clear that when Bacci provided Mr. Shurland with a receipt, on August 11, 2007, that displayed his credit card number, Bacci could not have ***willfully*** or even ***recklessly*** violated FACTA.

This intervening event of a new credit card machine being provided in July 2006 makes impossible a finding of a willful violation of FACTA because Bacci started using a terminal five months before the enforcement date that it reasonably believed was complaint with applicable rules, regulations or laws. In using a credit card terminal that it believed was compliant with applicable laws, there is no showing that Defendant's actions entailed "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2208-2209 (2007)(citations omitted.) At best, any printing by Bacci of receipts without credit card numbers being truncated during the class period was a technical mistake or even a negligent act; but, this does not and will not satisfy Plaintiff's burden of demonstrating a reckless disregard or willful violation of FACTA. *See Am. Arms Int'l*, 563 F.3d at 78. Summary judgment is proper as a jury could not return a verdict for Mr. Shurland on his FACTA claim because there is no genuine issue of material fact in the case to demonstrate Bacci acted in willful or reckless disregard of the statute.

### III. CONCLUSION.

There is no material fact in dispute between the parties to inhibit this Honorable Court's granting of summary judgment for Defendant. As a matter of law, since Bacci did not willfully violate FACTA, it cannot be held liable to Mr. Shurland for statutory damages. *See e.g., Barbieri v. Redstone Am. Grill, Inc.*, 2009 U.S. Dist. LEXIS 9309, *22 (N.D. Ill. Feb. 6, 2009)(plaintiff's claim for a willful violation of FACTA is precluded if there are no genuine

issues of material fact to show entitlement to recovery.) The actual testimony of witnesses in this case shows no notification of the FACTA requirements to this one customer of National Translink, Bacci. Additionally, there is no issue—no dispute—as to the key factual occurrence of National Translink providing Bacci with a replacement credit card terminal five months prior to the trigger date of FACTA for Defendant. This undisputed fact, alone, shows that the issue of willfulness cannot be tendered to the jury as no reasonable jury could find that a company could willfully violate FACTA if it had in place a credit card terminal that it believed was compliant with all laws, rules and regulations. Plaintiff has "admitted" that National Translink provided Bacci with a replacement credit card terminal that was meant to have "truncation information," which admission alone negates one element of his burden against Defendant—a showing of willfulness. (*See* Pl.'s Resp. to Def.'s Statement of Material Undisputed Facts, ¶¶ 26-27.) Therefore, summary judgment is proper for defendant[2].

**WHEREFORE**, Defendant, BACCI CAFÉ & PIZZERIA ON OGDEN, INC., prays that this Honorable Court enter an order 1) granting summary judgment in its favor and denying any and all claims against it arising out of this lawsuit; and 2) finding that there is no reason for delay of the enforcement or appeal of its order.

Respectfully submitted,

By: /s/ Molly A. Arranz
Attorneys for Defendant
BACCI CAFÉ & PIZZERIA ON OGDEN, INC.

---

[2] This failure to show willfulness by Bacci also defeats Plaintiff's Motion for Class Certification. Commonality cannot exist because the key factual and legal question—whether Defendant willfully violated FACTA—is not present as a common consideration. There is no predominance of this central, common issue. In addition, a class action is not a superior means of adjudication because there has been no class-wide practice of willful violations of FACTA after December 4, 2006. Moreover, even if this Court denied Defendant's Motion for Summary Judgment, finding a genuine issue of material fact, class certification can still be properly denied because it is Plaintiff's burden to show each element of Rule 23 by a preponderance of the evidence, and Plaintiff has not met his burden. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008)

Eric L. Samore, ARDC # 6181345
Molly A. Arranz, ARDC # 6281122
Erin A. Walsh, ARDC # 6291003
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

Dated: July 28, 2009