UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER D. SHURLAND, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 08 CV 2259 ) |
| BACCI CAFÉ & PIZZERIA ON OGDEN INC., and DOES 1-10, | ) Judge Pallmeyer ) ) |
| Defendants. | ) ) |
| BACCI CAFÉ & PIZZERIA ON OGDEN INC., | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| NATIONAL TRANSLINK CORP. | ) ) |
| Third-Party Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On August 11, 2007, Bacci Café & Pizzeria on Odgen, Inc. ("Bacci" or "Defendant") issued to Plaintiff Christopher D. Shurland ("Shurland" or "Plaintiff") a credit card receipt displaying Shurland's entire credit card number and expiration date. In so doing, Bacci violated the Fair and Accurate Transactions Act of 2003 ("FACTA"), an amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(g). FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." *Id.* A willful failure to comply with the Act permits the recovery of actual or statutory damages "not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a). Plaintiff seeks to represent a class

of more than 6,000 consumers to whom Bacci allegedly issued receipts that violate FACTA.

Plaintiff commenced this suit in the Circuit Court of Cook County, Chancery Division, on March 21, 2008, and on April 21, 2008, Bacci timely removed to federal court. On February 22, 2009, Bacci lodged a third-party complaint for breach of contract and contribution against National Translink Corp. ("National Translink"), the company that supplied Bacci with its credit card processing machine. Three motions are pending before the court: Shurland has moved for class certification; Bacci has moved for summary judgment, arguing that Plaintiff cannot show that Bacci's violations were willful; and National Translink has moved to dismiss Bacci's contribution claim. For the reasons set forth below, Plaintiff's motion for class certification is granted, Bacci's motion for summary judgment is denied, and National Translink's motion to dismiss is granted.

## **FACTUAL BACKGROUND**

On August 11, 2007, Plaintiff dined at Bacci Café & Pizzeria in Berwyn, Illinois, and received a cash register receipt displaying his entire credit card number and expiration date. (Def. 56.1 ¶ 7.) As of December 4, 2006, issuing a receipt that displays a customer's entire credit card number and expiration date violates FACTA and may subject the issuer to statutory damages if the violation was willful. (Def. 56.1 ¶¶ 6-7; 15 U.S.C. §§ 1681c(g), 1681n(a).

On the day Plaintiff ate at Bacci, the restaurant processed customers' credit card payments using a single credit card processing terminal it had purchased from National Translink, an independent sales organization that sells credit card processing services and terminals to small business owners. (Def. 56.1 ¶ 9; Tracy Dep. 6:21-24, Ex. E to Pl. Mem. in Support of Class Cert.) Bacci obtained its first terminal from National Translink in May 2004. To set up the terminal for use, Bacci filled out a bank application supplied by National Translink, and National Translink used the information in the application to obtain approval for Bacci's machine from a processing center. (Def. 56.1 ¶¶ 10-11.) As part of the service it provided for its merchant clients (including Bacci), Translink coordinates the processing center's programming of the client's terminal as well as the

credit card approvals necessary to process transactions on the terminal. (Def. 56.1 ¶ 11.) Once Translink contacts the processing center with its client's information, the processing center transmits software to the client's machine. (Def. 56.1 ¶ 12.) Thereafter, National Translink provides additional service in the form of technical support and answering its clients' questions about the operation of the terminal. (Def. 56.1 ¶ 13.) Under the terms of Bacci's contract with National Translink, Bacci was also a member of National Translink's "Merchant Club," which entitled Bacci to service on its machine or, if necessary, a replacement terminal in exchange for a set fee. (Def 56.1 ¶ 15.)

There is a dispute among the parties whether Defendant had notice of FACTA's credit card receipt truncation requirements, which went into effect in December 2006. Defendant claims that it first received notice of the truncation requirements in October 2007, when a customer notified a Bacci employee that she had received a receipt displaying her entire credit card number and expiration date. (Def. 56.1 ¶¶ 33-34.) After learning of the truncation problem, Bacci claims it contacted National Translink to obtain service on its terminal. Bacci was unable to program the terminal to truncate properly without National Translink's assistance, and, "starting immediately after the customer noticed the problem," Bacci began truncating customer receipts "by manually crossing out the numbers" until National Translink could service the terminal. (Def. 56.1 ¶ 34.)

Plaintiff has offered testimony from National Translink representatives and employees suggesting that Bacci received notice of FACTA requirements prior to October 2007. In early 2005, National Translink included a notice in its clients' monthly billing statements advising its clients that their terminals must be "properly programmed" to truncate credit card numbers appearing on receipts. (Def. 56.1 ¶ 16; Tracy Dep. 28-29, 90, Ex. D to Def. 56.1.) James Tracy, the vice president of National Translink, testified that National Translink's practice was to send this notice to all of its clients. (Pl. 56.1 ¶¶ 2-4; Tracy Dep. 28:6-12, Ex. E to Pl. Mot. to Certify Class.) Mr. Tracy could not confirm that National Translink had in fact sent Bacci a notification because all

statements involving Visa and Mastercard transactions must by law be destroyed after two years. (Def. 56.1 Resp. ¶¶ 3-4.) Mr. Tracy did testify, however, that the notice would have been sent to "every billing address in our system at that time." (Pl. 56.1 ¶ 4.)

In 2006, National Translink also placed Defendant on a list of approximately 200 clients it believed might not be in compliance with truncation requirements due to their specific terminal model. (Def. 56.1 ¶ 18.) National Translink customer representatives Douglas Porch and Noel Carey had the responsibility of contacting the businesses identified on the list. (Pl. 56.1 ¶ 9.) Mr. Porch testified that he attempted to contact customers regarding FACTA requirements, and made a note on his list if he received no response. (Pl. 56.1 ¶ 14.) When Mr. Porch reached one of Translink's clients, he informed the client of the FACTA requirements and then, depending on the terminal model, either transferred the client to National Translink's technical support for further assistance or gave the client a separate number for a service center in California for consultation about a replacement machine. (Pl. 56.1 ¶¶ 11-14; Porch Dep. 47-49, Ex. F to Pl. Mem. to Certify Class.) Mr. Porch had no personal recollection of speaking with any Bacci representative. (Def. 5.1 Resp. ¶¶ 16-17.) Mr. Porch did, however, identify a document called an MCMTER[1] report for Bacci Café and Pizzeria, which specified the type and model of machine owned by Bacci (a "Hypercom T7P") and included Bacci's contact information. (Pl. 56.1 ¶ 17; Porch Dep. 56, Ex. E to Def. 56.1.) Mr. Porch testified that he recognized his own handwritten note on the MCMTER indicating that on April 28, 2006, he faxed the MCMTER to Arizona CardSystems, a technical support center in Arizona that had the software necessary to update Bacci's terminal. (Pl. 56.1 17; Porch Dep. 63-64.) The handwritten note reads, "4/28/06, Friday 10:55 a.m. Please truncate. Thanks, Doug. Only last four credit card numbers to show." (Porch Dep. 62:20-23.) Although Mr. Porch could not specifically recall speaking to anybody at Bacci before sending the fax, he testified

---

[1] The court assumes MCMTER is an acronym, but neither party has supplied its unabbreviated form.

that he would not have sent the fax to Arizona CardSystems unless he had first contacted the customer about FACTA's truncation requirement. (Def. 56.1 Resp. ¶ 19; Pl. 56.1 ¶ 19.)

Noel Carey, a National Translink employee since 1999, also testified about the process of notifying National Translink's clients regarding FACTA's truncation requirements. (Pl. 56.1 ¶ 20.) Mr. Carey worked as a customer service representative during 2006 and 2007 and, like Mr. Porch, received a list of clients, including Bacci, whose machines might be operating in violation of FACTA. (Pl. 56.1 ¶¶ 20-21; Def. Resp. ¶ 21-22.) Using Bacci's MCMTER form, Mr. Carey identified Bacci as a customer that used a single credit card processing terminal and did not use a secondary processing company. (Pl. 56.1 ¶¶ 29, 31-34.) Mr. Carey testified that he was instructed to call any client that fit this description and used the Hypercom T7P terminal, the one Bacci used. (Pl. 56.1 ¶ 30.) Like Mr. Porch, Mr. Carey could not specifically recall speaking with anyone at Bacci, but he testified that the information in the MCMTER would have prompted him to call Bacci to verify its model of terminal and to determine whether its terminal truncated credit card numbers to the last four digits on customer receipts. (Pl. 56.1 ¶¶ 34-35.)

On July 14, 2006, in response to complaints from Bacci of "sticky buttons" on its terminal, National Translink agreed to ship Bacci a replacement terminal. Before the terminal shipped, Translink's technical support staff coordinated with Arizona CardSystems for the installation of information and program files onto the new terminal, including the installation of a truncation program. Vincent DiDiana, who, with his wife, owns Bacci's Berwyn, Illinois location, attested in a sworn affidavit that he "believed that the replacement credit card terminal would have met all the requirements found in all laws, rules and regulations governing the use of credit card terminals," but insisted in his deposition that he was unaware that truncation was a legal requirement prior to October 2007. (Vincent DiDiana Aff., ¶¶ 3-4, Ex. G to Def. 56.1; Vincent DiDiana Dep. 36, 28-42.) The replacement terminal was in use on August 11, 2007, when Plaintiff ate at Bacci and received a receipt displaying his full credit card number and expiration date.

## DISCUSSION

**I.      Defendant's Motion For Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining whether issues of material fact exist, the court must evaluate admissible evidence in the light most favorable to the nonmoving party. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). The court will deny summary judgment if it appears a reasonable jury could find for the nonmoving party. *Lawson v. CSX Transp.*, Inc., 245 F.3d 916, 922 (7th Cir. 2001).

Defendant does not dispute that it violated FACTA's truncation requirements. Defendant contends that summary judgment is nonetheless appropriate because Plaintiff has failed to present evidence that Defendant's violation was "willful" as a matter of law.

The Supreme Court has held that "willfulness" under FACTA includes both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57 (2007) ("[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." (internal citations omitted)) In *Safeco*, the Court interpreted "recklessness" in keeping with the common law definition of action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. The standard is an objective one, constituting "something more than negligence but less than knowledge of the law's requirements." *Kubas v. Standard Parking Co.*, 594 F. Supp. 2d 1029, 1032 (N.D. Ill. 2009) (quoting *Murray v. New Cingular Wireless Servs, Inc.*, 523 F.3d 719, 726 (7th Cir. 2008)).

Defendant contends that it could not have violated FACTA willfully because it lacked actual knowledge of the statute's provisions and because Plaintiff has failed to show evidence of

6

recklessness. Defendant notes that no one at National Translink was able to confirm that Bacci in fact received notification of FACTA's requirements either in its billing statement or in later telephone communications with Translink representatives. Defendant also concludes that the very length of time it was in violation of FACTA defeats a finding of recklessness: Bacci received the replacement machine, which apparently never truncated properly, five months before FACTA became effective and more than year before issuing the receipt to Plaintiff on August 11, 2007.

The court finds Defendant's arguments unpersuasive. Plaintiff has presented evidence in the form of deposition testimony and business records sufficient to support a reasonable inference that Defendant received notice of FACTA's truncation requirements both in its monthly billing statement and via phone calls from National Translink employees. Defendant is correct that none of the employees deposed could specifically recall speaking to anyone at Bacci. But Mr. Tracy, Mr. Porch, and Mr. Carey explained in detail the methods they used to notify hundreds of National Translink's clients of the need to truncate credit card receipts, and their documentation and contemporaneous handwritten notes of this process support the inference that National Translink did in fact contact Bacci regarding the new truncation requirements. Based on these records and the deponents' corroborating testimony, a reasonable jury could conclude that Bacci received notice and either knowingly or recklessly disregarded it. That Bacci received a second, noncompliant, credit card terminal after these alleged contacts likewise does not defeat the reasonable and permissible inference that it continued to ignore the requirements after receiving a second machine that clearly was not in compliance. Mr. DiDiama's attested belief that the new terminal would meet all necessary legal requirements does not resolve the factual issue of whether he was aware of FACTA's requirements throughout the period the new terminal was in use. Plaintiff has demonstrated genuine issues of material fact as to when Defendant obtained knowledge of FACTA's truncation requirements and whether it acted willfully in disregarding those requirements when it issued Plaintiff's receipt on August 11, 2007. Defendant's Motion for Summary Judgment

[81] is therefore denied.

## II. Motion for Class Certification

To maintain a class action, the proposed class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequate representation. FED. R. CIV. P. 23(a). The class then must meet the additional requirements of one of the three classes listed in Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Plaintiff proposes the following class definition:

> All persons to whom Defendant provided an electronically printed receipt at the point of a sale or transaction from December 5, 2006 through November 2007 displaying more than the last five digits of the purchaser's credit card or debit card number.

(Mot. for Class Cert. 1-2.)

Bacci does not dispute that it issued receipts that did not comply with FACTA's five-digit truncation requirement during the period alleged. (*See* Def.'s Mem. in Supp. of Its Mot. for Summ. J. at 4-5.) Rather, Bacci opposes class certification on two grounds: First, Defendant contends that Plaintiff cannot show a class-wide pattern of willful violations, and therefore commonality, predominance, and superiority are lacking. As discussed in greater detail below, this argument contemplates Plaintiff's chance of success on the merits and is irrelevant to issues of class certification. *See Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 214 (N.D. Ill. 2008) ("[T]he Court does not delve into the merits of the ultimate issues in the case, which do not affect the question of class certification under Rule 23. Accordingly, this Court does not consider the parties' arguments as to whether [defendant's] violation of FACTA was willful; i.e., whether [defendant] was aware of the expiration date-masking requirement when it issued receipts with the expiration date on it." (internal citations omitted)). Second, Defendant argues that Plaintiff cannot establish numerosity because it has failed to provide information sufficient to identify individual members of

8

his proposed class. The level of specificity Defendant proposes, however, exceeds that required for the purposes of ascertaining a potential class. The court therefore grants Plaintiff's motion for class certification.

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." It is not required that the plaintiff know the precise number of class members, and in the Seventh Circuit, a class as small as forty may suffice. *See McCabe v. Crawford*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (citing *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir.1969)). From December 2006 until October 2007, Defendant allegedly produced 6,359 receipts that violated FACTA by displaying more than the final five digits of the cardholder's credit card number. Plaintiff apparently arrived at this number based on the total number of violations attributed to Bacci in National Translink's records. Plaintiff does not indicate whether he obtained copies of the actual receipts, though he does claim to be in possession of "detailed records containing information related to all relevant transactions indicating FACTA violations." (Pl. Mem. in Supp. of Cert. at 6 n.3.) Plaintiff has chosen to withhold these records "to protect the privacy of the persons involved in the transactions and their private credit card information," but has expressed readiness to produce the records under seal at the court's request. (*Id.*) It is thus unclear whether Plaintiff possesses at this time information sufficient to identify individual class members.

The case law is clear, however, that a present lack of identifying details such as contact information or the names of class members need not defeat class certification. In ascertaining class size, the court "may rely on common sense assumptions or reasonable inferences" based on known facts. *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 612 (N.D. Ill. 2009) (citing *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 300 (N.D. Ill. 2008)). Given that each violation

purportedly reflects a single credit card transaction, one could reasonably conclude that the number of violations corresponds roughly to the number of individual class members, giving rise to a potential class consisting of more than 6,300 consumers, a number far in excess of practicable joinder. Finally, as Plaintiff himself acknowledges, class certification is "inherently tentative" and the court "remains under a continuing obligation to review whether proceeding as a class action is appropriate." *Harper v. Yale Int'l. Ins. Agency, Inc.,* No. 03 C 3789, 2004 WL 1080193, at *2 (May 12, 2004) (quoting *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)). The court "remains free to modify or vacate a certification order should it prove necessary." *Binion v. Metro. Pier and Exposition Auth.*, 163 F.R.D. 517, 520 (N.D. Ill. 1995). The numerosity requirement is clearly met.

### 2. Commonality

In order to meet the commonality requirement, Plaintiff must show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Plaintiff alleges the following common questions of law and fact:

1. Whether Defendant printed 6,359 sales or transaction receipts violated FACTA;

2. When Defendant put its machines . . . in service;

3. Whether Defendant's acts or omissions were "willful" (i.e. knowing or reckless) under FACTA; and

4. What amount of statutory damages the Court should order Defendant to pay.

(Pl. Mem. in Supp. of Mot. to Cert. at 10.) The court agrees that the circumstances here generate common questions of fact (when and under what circumstances Defendant printed the receipts on its machines) and law (assuming Defendant printed the receipts, whether Defendant did so willfully and what damages may be appropriate). *See Matthews*, 248 F.R.D. at 215 ("[T]he common nucleus of operative fact is the defendant's issuance of receipts that display the expiration date or more than five digits of a person's credit card . . . ."); *Meehan v. Buffalo Wild Wings, Inc.*, 249

10

F.R.D. 284, 286 (N.D. Ill. 2008) (same).

### 3. Typicality

Defendant does not dispute that the typicality requirement has been met. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Meehan*, 249 F.R.D. at 286-87. (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). Plaintiff's proposed class consists of individuals who were all subjected to the same conduct, and each representative's claim would be based on the same legal theory and governed by the same law. Rule 23(a)(3)'s "typicality" requirement is therefore satisfied.

### 4. Adequacy of Representation

Rule 23(a) requires that the class representative must be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Defendant does not challenge the adequacy of either the proposed class representative or class counsel. The "adequacy" requirement is relatively modest and will generally be satisfied if two conditions are met: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests antagonistic to those of the other class members. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). There is no dispute as to the qualifications of Plaintiff's counsel. Given the identity of claims among Plaintiff and proposed class members, it is unlikely that Plaintiff's claims would conflict with those of any other class members. Finally, Plaintiff assures the court that he "understands the obligations of a class representative, the nature of the claims, is involved in the litigation, and has an interest in representing the class and enforcing FACTA." (Pl. Mem. in Supp. of Class Cert. at 12.)

### B. Rule 23(b)(3)

A movant who has met the requirements of Rule 23(a) may proceed under one of the three types of class actions described in Rule 23(b). Plaintiff here proceeds under Rule 23(b)(3), which

requires a showing "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1. Predominance

Common issues of fact and law are evident on the face of Plaintiff's complaint and inherent in the proposed class definition. The conduct at issue, Defendant's creation of computer-generated credit card receipts, is uniform across the class. *See Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at *4 (N.D. Ill. Sept. 24, 2008). The question of whether that conduct was willful (and consequently whether Defendant is liable) similarly predominates over other individual issues and, indeed, will likely prove the principal common question in this case, given that Defendant concedes that it violated the Act's truncation requirements. Defendant's contention that common issues do not predominate over individual ones because Defendant did not act willfully in violating the statute is consequently a nonstarter. As discussed above, Plaintiff has met its burden of production regarding Defendant's willfulness, and the question of whether Defendant acted willfully is central both to Plaintiff's individual claim and to the claims of the class as a whole. *See also Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 295-96 (N.D. Ill. 2008) (certifying class where Defendant issued receipts displaying entire card number and expiration date to all members of proposed class, but damages sought differed among individual plaintiffs).

### 2. Superiority

Rule 23(b)(3) also requires Plaintiff to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P 23(b) (3). Rule 23(b)(3) is designed for situations where "potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Redmon*, 249 F.R.D. at 296 (citing *Murray v. GMAC Mortgage Corp.*, 434 F.3d 848, 953 (7th Cir. 2006)). "The Seventh Circuit has held that the damage amounts available in FCRA actions—$100 to $1000 per individual—are especially well suited to

resolution by class action." *Id.*

Bacci nonetheless argues that certification is inappropriate because (1) there is no evidence of injury due to willful conduct; (2) Plaintiff has failed to provide a means of identifying and notifying absent class members; and (3) there is a need for individual inquiry into whether each class member used a "consumer" credit or debit card as opposed to a "business" card. The court has already rejected Defendant's "willfulness" argument in its Motion for Summary Judgment and will not revisit it here.

The administrative difficulty of identifying and notifying members of a large class, while an important factor for consideration, will not alone defeat a motion for class certification. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation.") While Rule 23(b)(3) entitles class members to reasonable notice and the opportunity to opt out of the litigation, these requirements may be met through a variety of means, including, if other methods do not work, publication. *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (publication notice approved for class of 1.4 million members where defendants' records were incomplete). Many courts, including this one, have certified classes under nearly identical circumstances, where the identities of individual class members were not yet ascertained. *E.g.*, *Beringer*, 2008 WL 4390626, at *6; *Redmon*, 249 F.R.D. at 297-98; *Meehan*, 249 F.R.D. at 287; *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 835 (N.D. Ill. 2008); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82, 84, 90 (N.D. Ill. 2008). Further, as Plaintiff points out, class discovery has not yet begun in this case, and Plaintiff will likely gain additional information in the form of records from third-party Defendant National Translink. Indeed, Plaintiff has already obtained some records related to the alleged violations with details identifying individual card users. (*See* National Translink Transaction Report, Ex. C to Pl. Reply Br. in Supp. of Mot. to Certify Class (partially redacted).)

Finally, the court is not troubled by the fact that Plaintiff's proposed class is not limited to

transactions made with "consumer" credit cards. Defendant contends that FACTA differentiates between "consumer" and "business" credit and debit cards by limiting its scope to "consumer" card transactions. Defendant's sole source of authority for this proposition comes from a Central District of California opinion denying class certification on the basis that only those who paid the defendant with "consumer" credit or debit cards could recover damages under FACTA and Plaintiff's proposed class was not limited to "consumers." *Najarian v. Avis Rent A Car Sys.*, No. CV 07-588-RGK, 2007 WL 4682071, at *3 (C.D. Cal. June 11, 2007). The opinion itself does not explain the statutory basis for this reasoning, and the plain language of the Act makes no such distinction: "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g). Nor did Congress carve out an exception for "business credit cards" under the Act. While "cardholder" is not specifically defined under FACTA, the term appears in the general provisions of Title 15 and is defined broadly as "any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." 15 U.S.C. § 1602(m). A "person" means "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). FACTA's protections thus extend to holders of both business and consumer credit cards.

True, FACTA does restrict the availability of civil damages to *consumer* cardholders. 15 U.S.C. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . .") FACTA defines "consumer" as "an individual," thus limiting any private cause of action under § 1681n to natural persons, as opposed to artificial entities. 15 U.S.C. 1681a(c). Despite this limitation, isolating "consumer" cardholders from entity cardholders is unlikely to prove insurmountable for class identification purposes, and in any event, should not bar class certification under the circumstances

14

presented here. *See Beringer*, 2008 WL 4390626, at * 6 ("Numerous cases have proceeded under FACTA in this district and others on similar facts, and the court is unaware of any instance where identifying the class members posed a substantial manageability obstacle to certification.") To the court's knowledge, only two other courts have considered this issue directly, and both reached similar conclusions. *See Follman v. Village Squires, Inc.*, 542 F. Supp. 2d 816, 819 (N.D. Ill. 2007) (noting that "cardholder" "protects a broader class than just consumers," insofar as it may apply "to both individual cardholders and entity cardholders."); *Grabein v. Jupiterimages Corp.*, No. 07-22288-CIV, 2008 WL 2704451, at *3-*4 (S.D. Fla. July 7, 2008). Accordingly, the court concludes that class certification is superior to other forms of litigation for the resolution of the issues in this case.

### III.     Motion to Dismiss Third-Party Complaint

Finally, the court turns to the claims that have arisen from Bacci's contractual relationship with National Translink, described in part above. On May 24, 2004, Bacci entered into a "Merchant Processing Agreement" (hereinafter "MPA") with National Translink and Provident Bank. Under the MPA, National Translink agreed to provide credit card processing services to Bacci in exchange for a fee, and agreed to service, repair, and replace Bacci's credit card terminal and supply it with paper and ink, in exchange for a monthly membership fee in National Translink's "Merchant Club." (1st Am. Third-Party Compl. ¶¶ 16, 19.) National Translink agreed to "use due care in providing services covered by this Agreement" and assured Bacci "that the performance of all services called for in this Agreement shall be consistent with industry standards." (MPA, Ex. B to 1st Am. Third-Party Complaint.)

In addition to National Translink's obligations under the MPA, Bacci alleges that in July 2006, National Translink orally offered to replace Bacci's defective credit card terminal and "to ensure, among other things, that the hardware and or software would be properly installed, implemented, maintained and would be compliant with all federal laws, including FACTA, and all

15

standards and practices of the industry." (1st Am. Compl. ¶¶ 31-32.) On July 14, 2006, National Translink allegedly programmed the replacement credit card processing machine and shipped it to Bacci at its location in Berwyn, Illinois. (*Id.* ¶¶ 21-22.) Shortly thereafter, Bacci used the replacement terminal to provide customers at its restaurant with credit and debit card receipts. (*Id.* ¶¶ 15-20.) On August 11, 2007, Charles Shurland allegedly received a credit card receipt printed on the replacement terminal; the receipt included his full credit card number and its expiration date, in violation of FACTA. (*Id.* ¶ 19.)

In Counts I and II of its Third-Party Complaint against National Translink, Bacci alleges that National Translink violated its obligations under the MPA and its oral agreement to ensure that the replacement terminal complied with federal law. Count III of the First Amended Third-Party Complaint seeks contribution from National Translink based on alleged breaches of these contractual agreements between the parties. National Translink has moved to dismiss this claim, arguing that federal law does not recognize a claim for contribution from a third-party defendant under these circumstances.

In deciding a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th. Cir. 2008); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). On a motion to dismiss, the court may consider only the well-pleaded allegations of the complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Additional documents such as a contract, may, however, also be considered "if they are referred to in the plaintiff's complaint and are central to his claim." *Id.* (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994)). Because the contract attached and referred to in the Third-Party Complaint, the MPA, is central to Bacci's contribution claim, the court may consider it in ruling on National Translink's Motion to Dismiss Count III of the First Amended Third-Party Complaint.

A typical contribution claim arises under tort law where "two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." *Nw. Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 87-88 (1981).  Where, as in this case, the action alleges a statutory violation rather than a tort, the Supreme Court has recognized that a defendant may seek contribution only if Congress has created an affirmative cause of action for contribution; federal common law has recognized such a right; or the parties agreed, prior to the litigation, that any liability would be shared.  *See Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753, 754 (N.D. Ill. 1997) (recognizing "three potential federal grounds for contribution—express or implied congressional enactment, federal common law or private contractual agreement" (citing *Sikes v. AT&T Co.*, 841 F. Supp. 1572, 1582 (S.D. Ga. 1993)); *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981); *Nw. Airlines*, 451 U.S. at 90-91.  The parties here agree that Congress did not expressly or impliedly create a right to contribution under FACTA, and that federal common law does not recognize a general right to contribution for federal statutory violations.  *Texas Indus.*, 451 U.S. at 642.  Plaintiff's contribution claim rests on this third theory, that the parties agreed prior to the commencement of litigation to share in any liability.

Because "[c]ontribution is predicated upon tort, not contract, liability," it is rare that the parties will agree in advance to share responsibility for the other's unlawful acts.  *J.M. Krejci Co., Inc. v. Saint Francis Hosp. of Evanston*, 148 Ill. App. 3d 396, 396, 499 N.E.2d 622, 624 (1st Dist. 1986.)  Indeed, the parties uncovered only two cases recognizing a private contractual arrangement as a federal ground for contribution:  *Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753 (N.D. Ill. 1997) and *Sikes v. American Telephone & Telegraph Co.*, 841 F. Supp. 1572 (S.D. Ga. 1993) (cited in *Kay*).  Neither of these cases is controlling, and neither supports Bacci's claim for contribution against National Translink.  *Sikes* upheld a contribution claim among joint tortfeasors in a RICO action, where the third-party defendant game operator and its legal counsel had

17

warranted to plaintiff telephone company "that the [Let's Make A Deal] game was legal in all respects," and had "agreed to indemnify [plaintiff] if [plaintiff] were found liable as a result of that game." 841 F. Supp. at 1582. *Kay* similarly recognized that a contractual arrangement between litigants could support a contribution claim, but found no such claim available as the cross-claimant "[did] not claim any contractual arrangement between the litigants that would entitle it to contribution." 966 F. Supp. at 755.

Bacci reads *Kay* and *Sykes* as permitting a third-party contribution claim grounded in the mere existence of a contractual relationship between the parties, regardless of whether the contract includes provisions in which the parties expressly agreed to share liability: "No court has ruled that claims for contribution are limited only to those cases where the contract includes express language allowing for contribution." (Bacci's Resp. to Mot. to Nat'l Translink's Dismiss Count III of the Third-Party Compl. at 6.) Both *Kay* and *Sykes* make clear, however, that a private contractual right to contribution must arise from an express agreement between the parties. The *Sykes* court did construe the parties' indemnity agreement as providing contribution rights, but noted that "those rights were expressly created by the parties in a contractual agreement preceding the litigation." 841 F. Supp. at 1582. In *Kay*, the cross-claimant did not allege the existence of any agreement between the parties that would entitle it to contribution, and the court did not address the specific terms required for such a right. Nor did *Kay* suggest that any private contractual arrangement, regardless of its nature, could support a claim for contribution. *See* 966 F. Supp. at 755.

The court will not imply an agreement to share liability where there is no evidence the parties contemplated such an arrangement. Neither the MPA nor National Translink's alleged oral representations provide for any agreement to share liability for Bacci's alleged violation of FACTA or any other law. Even if the MPA required National Translink to comply with FACTA pursuant to its obligation "to comply with applicable 'bylaws and rules promulgated'" and with "industry standards," (1st Am. Third-Party Compl. ¶¶ 17, 18), the breach of this obligation would support a

18

contract claim, not a tort remedy of contribution.  Nor does National Translink's alleged breach of its oral contractual obligations trigger contribution liability, even if the alleged warranties included a promise to comply with all federal laws in supplying Bacci with a replacement terminal.  Again, an action for breach of warranty sounds in contract, not tort, and a party's breach of its promise to comply with federal law does not support liability for contribution under federal law. *See In re Ameriquest Mortgage Co. Lending Practices Litg.*, No. 05-7097, 2008 WL 630883, at *5 (N.D. Ill. Mar. 5, 2008).  Without opining on the merits of the Complaint's remaining counts, the court concludes that Bacci has at most stated claims for breach of contract and breach of oral contract.

In the final third of its brief, Bacci devotes considerable attention to whether the MPA's provisions on indemnification and liability would bar its contribution claim.  The court need not address these arguments, as Bacci has failed to state a valid claim for contribution against National Translink.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [81] is denied. Plaintiff's Plaintiff's Motion for Class Certification [40] is granted.  National Translink's Motion to Dismiss Count III of the First Amended Third-Party Complaint [75] is granted.

ENTER:

Dated:  August 19, 2009

_____
REBECCA R. PALLMEYER
United States District Judge