**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER D. SHURLAND, individually and as the representative of a class of similarly-situated persons, </br></br>Plaintiff, </br></br>v. </br></br>BACCI CAFÉ & PIZZERIA ON OGDEN, INC. and DOES 1–10, </br></br>Defendants. | ) ) ) ) ) ) ) ) No. 08 C 2259 ) ) Judge Rebecca R. Pallmeyer ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

Christopher D. Shurland claims that on August 11, 2007, Defendant Bacci Café & Pizzeria on Ogden ("Bacci") violated federal law by issuing a credit card receipt that revealed all of the digits of his credit card number, and its expiration date. On behalf of a class of Bacci customers, Shurland has filed a complaint seeking statutory damages for the alleged violation of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which provides that a person accepting a credit card may print no more than the last five digits of the credit card number.

Bacci has filed a third-party complaint against National Translink Corporation ("Translink"). Bacci alleges that any FACTA violation was the result of Translink's failure to meet its obligations to Bacci under the terms of a "Merchant Processing Agreement," ("MPA" or "Agreement") in which Translink agreed to provide Bacci with credit card processing services and with service and repair of Bacci's credit card processing terminal. The court has previously dismissed Bacci's contribution claim against Translink. Translink now moves for judgment on the pleadings on Bacci's claims for breach of contract and breach of implied warranties. For the reasons explained here, the motion is granted.

## FACTS

Like a motion to dismiss, a motion for judgment on the pleadings calls on the court to

presume the truth of all of the well-pleaded allegations of the complaint and view those allegations in the light most favorable to the party who filed it–here, Bacci. *Bernard v. Union Tp. High School Dist. No. 30*, 5 F.3d 1090, 1091 (7th Cir. 1993). This statement of facts is taken from Bacci's First Amended Third-Party Complaint.

On May 11, 2004, Bacci entered into a Merchant Processing Agreement with Translink and Provident Bank in which Bacci paid a fee in exchange for the provision of credit card payment services. (1st Am. Compl. ¶¶ 15, 16.) Bacci also agreed to pay a monthly fee in exchange for status as a member of the "Merchant Club," entitling Bacci to certain enhanced services. (*Id.*) Specifically, the Merchant Processing Agreement explains that "[i]f Merchant has opted for Merchant Club Services, BANK shall provide MERCHANT with a terminal/printer replacement service, described below, and a maximum quantity of (2) rolls of paper per quarter and (1) printer ribbon per six (6) months." (MPA § 2.6.)

Congress enacted FACTA, an amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq, on December 4, 2003. FACTA requires truncation of all electronically printed receipts no later than December 5, 2006.[1] 15 U.S.C. § 1681c(g)(3)(A). Bacci's relationship with Translink continued during and after this date. Thus, during July 2006, Bacci requested a replacement terminal from Translink. (1st Am. Compl. ¶ 21.) Translink sent Bacci a replacement credit card processing terminal pursuant to Bacci's membership in the "Merchant Club" on July 14, 2006. (*Id.* ¶ 22.)

On August 11, 2007, Bacci issued a credit card receipt to Christopher D. Shurland that allegedly violated the requirements of FACTA because it did not truncate Shurland's credit card

---

[1] FACTA also required all "cash register[s] or other machine[s] or device[s] that electronically print[] receipts for credit card or debit card transactions that [are] first put into use on or after January 1, 2005" to immediately comply with the truncation requirement. 15 U.S.C. § 1681c(g)(3)(B). Shurland, however, does not allege Bacci violated FACTA immediately upon putting its replacement terminal into use, but rather only as of December 5, 2006.

number on his receipt and because it failed to omit the expiration date of the credit card. (1st Am. Compl. ¶ 10.) On March 21, 2008, Shurland filed this class action lawsuit against Bacci, alleging a willful violation of FACTA and seeking statutory damages of between $100 and $1,000 per occurrence. Shurland alleged that Bacci issued 6,359 receipts in violation of FACTA between December 5, 2006 and October 31, 2007.[2]

In its third-party action, Bacci alleges that Translink was under a contractual obligation to provide a credit card processing terminal to Bacci that was compliant with FACTA. (*Id.* ¶¶ 17-20, 26, 28.) Bacci also alleges that Translink breached an implied warranty of merchantability and an implied warranty of fitness for a particular purpose by failing to "repair and furnish replacement of its credit card terminal in a manner that was generally suitable for Bacci's use at its restaurant location and in compliance with industry standards and federal and state rules, regulations and statutes, including but not limited to FACTA." (*Id.* ¶ 47.)

## **DISCUSSION**

National Translink Corporation has moved for judgment on the pleadings on Bacci's breach of contract and breach of implied warranties claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. As noted, a Rule 12(c) motion is evaluated using the same standard applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim. *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). Under that standard, a motion for judgment on the pleadings should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. In evaluating the motion, [the court] accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004), quoting *Forseth v. Vill. of Sussex*, 199 F.3d

---

[2] Shurland obtained records from Translink detailing each transaction that occurred between these dates by partial credit card number, date, and amount. (Mem. Of Law in Supp. Of Pl.'s Mot. For Class Cert. at 6.)

363, 368 (7th Cir. 2000).

In ruling on a 12(c) motion, the court may consider documents attached to the pleadings. "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998). In this case, the Merchant Processing Agreement attached to the pleadings will be considered as part of the pleadings. Bacci contends that Translink has breached obligations to Bacci under that Agreement and has breached implied warranties. The court addresses these arguments in turn.

**A.      Breach of Contract**

Bacci alleges, first, that Translink breached its contract by not providing Bacci with a credit card processing terminal that meets the requirements of FACTA. Bacci contends the terms of the Merchant Processing Agreement imposed on Translink a contractual duty to provide Bacci with a FACTA-compliant terminal.

For purposes of a motion to dismiss or a judgment on the pleadings, the meaning of a contract "must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language." If the court determines that a contract is unambiguous, it may determine its meaning as a matter of law. An unambiguous contract controls over a contrary reading in the plaintiff's complaint. *INEOS Polymers Inc. v. BASF Catalysts,* 553 F.3d 491, 498 (7th Cir. 2009) *(*quoting *McWane, Inc. v. Crow Chicago Indus., Inc.,* 224 F.3d 582, 584 (7th Cir. 2000)). "The mere fact that parties allege conflicting interpretations of the contract is not sufficient in itself to show an ambiguity. . . . A contract is ambiguous where the language used is susceptible to more than one reasonable meaning. . . . If, however, the contract is susceptible to only one meaning, the court may interpret the contract without considering extrinsic evidence." *Facility Wizard Software, Inc. v. Southeastern Technical Services, LLC,* 647 F.Supp.2d 938, 946 (N.D. Ill. 2009) (citations omitted).

Bacci points to three separate provisions of the MPA that it alleges required Translink to provide Bacci with a credit card processing terminal that produced receipts in compliance with FACTA. First, Bacci notes that its membership in the "Merchant Club" obligated Translink to provide "service, repair, and replacement of its credit card machine, as necessary." (1st Am. Compl. ¶ 16.) Second, Bacci points to language in the MPA obligating Translink to "use due care in providing services covered by this Agreement" and to conduct its "performance of all services called for in this Agreement . . . consistent with industry standards." (*Id.* ¶ 17 (quoting MPA § 6.3).) According to Bacci, "industry standards included, but were not limited to, providing service, repair and replacement of credit card processing machines or terminals in a manner compliant with applicable codes, statutes, laws and regulations, including but not limited to FACTA." (*Id.* ¶ 17.) Finally, Bacci urges that in the MPA, "Translink further agreed that it was fully bound by and would fully comply with applicable 'bylaws and rules promulgated' and any amendments or additions made thereto." (*Id.* ¶ 18 (quoting MPA § 11.1).)

In the court's view, none of these provisions imposes a contractual duty on Translink to bring Bacci's credit card processor into compliance with the FACTA truncation requirements, or to provide Bacci with a FACTA-compliant replacement terminal.[3] The court begins with Bacci's

---

<sup>3</sup> Notably, Translink disputes that it is bound by most provisions of the MPA. (Def.'s Reply Mem. In Supp. of Mot. for J. on the Pleadings at 6.) "National Translink did not execute the agreement." (*Id.*) The MPA explains that it is an agreement between "Provident Bank (BANK) National Translink Corporation (NTC) acting on behalf of and for Acquirer and the undersigned merchant (MERCHANT)." Bacci has not explained why it did not name Provident Bank instead of or in addition to Translink, but does argue that Translink was "not simply contracting in its representative capacity but was, itself, contractually liable to Bacci." (Pl.'s Resp. In Opp'n To Def.'s Mot. for J. On the Pleadings at 8.) Bacci notes that the cover page of the Merchant Processing Application is on Translink's letterhead and that is not adequately identified or disclosed as Translink's principal. "The agent of a disclosed principal is not personally bound by the terms of the contract which he executes in behalf of his principal unless he agrees to be personally liable." *Knightsbridge Realty Partners, LTD. v. Pace*, 101 Ill.App.3d 49, 53, 427 N.E.2d 815, 819 (1st Dist. 1981). Whether Translink adequately disclosed that it was acting on behalf of Provident Bank is an issue the court need not decide; even assuming that the agreement is binding on Translink, the court concludes Bacci has not adequately alleged a breach.

allegation that its membership in the "Merchant Club" imposed a contractual obligation upon Translink to provide it with a FACTA-compliant terminal. (1st Am. Compl. ¶ 16.) The MPA's description of the "Merchant Club" (MPA § 3.6) describes the additional supplies to be provided to the merchant, including receipt paper and a printer ribbon, and obligates the Bank to provide a replacement terminal, should an existing terminal malfunction. Although these additional services are spelled out, the MPA contains no language suggesting that membership in the Merchants Club imposed any obligation on Translink to ensure Bacci's compliance with FACTA or other laws, and Plaintiff has not pointed to any language in the MPA to that effect.

Bacci's second argument is no more persuasive. Specifically, Bacci points to contractual language in the MPA requiring that "BANK will use due care in providing services covered by this Agreement, and the performance of all services called for in this Agreement shall be consistent with industry standards." (MPA § 6.3.) The "services covered by this agreement," however, again make no mention of FACTA, and no terms or provisions of the agreement place any explicit contractual duty upon Translink or Bank to ensure Bacci's compliance with FACTA. The MPA was, as noted, an agreement to provide credit card payment services, and its provisions relate to the parties' responsibilities concerning those services in some detail: Thus, the MPA describes the merchant's (Bacci's) responsibilities to take actions designed to prevent fraud or other problematic transactions, such as keeping track of the details of the sale (MPA § 1.2) and notifying customers in advance of the type of refund they can receive from the merchant. (MPA § 1.3.) The MPA also sets forth the responsibilities of the Bank to keep records of transactions (MPA § 3.3), and to direct certain transactions into escrow accounts (MPA § 4.1), and spells out the circumstances under which the bank may refuse to accept the payment. (MPA § 3.1.) The plain and unambiguous language of the Agreement nowhere suggests that the "services" to be furnished include assurance that Bacci's receipts will be FACTA-compliant.

Finally, Bacci emphasizes that the MPA requires Translink to be "fully bound by" and to "fully

comply with applicable 'bylaws and rules promulgated,'" and suggests that this obligation requires Translink to take steps to assure that Bacci would comply with FACTA. (1st Am. Compl. ¶ 18 (quoting MPA § 11.1).) Again, the court does not read the provisions as Bacci does. The MPA itself makes clear that the "bylaws and rules" to which it refers are those promulgated by Visa and Mastercard: "This Agreement is subject to the bylaws and rules promulgated by VISA and Mastercard or any other Card plan. The parties hereto are bound by and shall fully comply with bylaws and rules and by such amendments or additions as may be made hereto." (MPA § 11.1.)

The only mention in the MPA regarding compliance with laws similar to FACTA is a provision requiring the *Merchant*–that is, Bacci–to comply with applicable laws: "MERCHANT warrants and agrees that MERCHANT shall fully comply with all federal, state, and local laws, rules and regulations, as amended from time to time, including the Truth-in-Lending Act and Regulation Z of the Board of Governors of the Federal Reserve System." (MPA § 1.15.) This explicit provision requiring Bacci to take responsibility for legal compliance, and the lack of any contrary provision of the MPA assigning any duty to Translink or the Bank to ensure compliance with FACTA or similar laws, satisfy the court that neither Translink nor the Bank had a duty to ensure FACTA compliance.

Nothing in any of the limited case law suggests a broader reading of these provisions. In two other cases from this district, the courts have addressed third-party contractual liability in similar situations involving FACTA compliance. Those cases suggest that third-party liability is appropriate only where a more specific contractual term or arrangement would support that conclusion. In one such case, the contract provided that the credit card processor "shall comply with all safety measure[s], *applicable laws*, rules[, and] regulations for the safety of all persons and property at the premises." *Stewart v. Gino's East Restaurant Corp.*, No. 07 C 6340, 2008 WL 4865882, at *2 (N.D. Ill. July 8, 2008) (emphasis added). The *Stewart* court declined to hold that this language necessarily imposed an obligation on the credit card processor to assure FACTA compliance, but did find that the language was sufficiently ambiguous as to deny the credit card processor's motion

to dismiss. In another situation, this court found that a subcontractor who arranged *all* of the credit card payment responsibilities for Standard Parking, was asked to bring Standard into FACTA compliance, and represented that he would do so, could be held liable for Standard's failure to comply with the Act. *Beringer v. Standard Parking O'Hare Joint Venture,* Nos. 07 C 5027, 07 C 5119, 2008 WL 4890501, at *1, 7 (N.D. Ill. Nov. 12, 2008). Each of these cases differs from this one, where the Translink made no commitment to assure that Bacci's machinery would comply with FACTA.

Bacci, however, argues that even if the duty is not explicitly imposed by the MPA, it might be proven through the introduction of parol or extrinsic evidence.[4] Significantly, however, rather than identifying any such extrinsic evidence of the parties' intent, Bacci instead challenges the enforceability of language that appears on the reverse side of the application Bacci signed with Translink. Bacci contends that language consists of "microscopically printed terms and conditions in a 'Merchant Processing Agreement.'" (Pl.'s Resp. In Opp'n To Def.'s J. On the Pleadings at 2.) This small print, Bacci believes, supports the conclusion that "the Agreement is capable of more than one interpretation given the unreadability of the terms, to whom they apply, and the related documentation . . . ." (*Id.* at 8-9.) Bacci characterizes Translink as "attempt[ing] to insulate itself

---

[4] Bacci also suggests that "the Agreement Bacci appended to the Third-Party Complaint was only part of the forms presented to Bacci and there were subsequent events that compound Translink's contractual duties." (Pl.'s Resp. In Opp'n to Def.'s J. On the Pleadings, 8.) In fact, "under Illinois law, parties to a written contract may alter or modify its terms by a subsequent oral agreement, even though the terms of the contract preclude oral modification." *A.W. Wendell & Sons, Inc. v. Qazi*, 254 Ill. App. 3d 97, 105, 626 N.E.2d 280, 287 (2nd Dist. 1993). In its pleadings and briefings on this motion, however, Bacci makes no reference to any additional forms or oral modifications to the MPA.

Bacci earlier did allege a breach of oral contract, specifically that "Translink offered and agreed to provide Bacci with a replacement credit card terminal and to ensure, among other things, that the hardware and or software would be properly installed, implemented, maintained and would be compliant with all federal laws, including FACTA, and all standards and practices of the industry." (1st Am. Compl. ¶ 32.) Bacci has since withdrawn this claim, however, and the court denied leave to amend, noting the absence of any consideration for the alleged oral agreement. (Mot. Hr'g, Jan. 12, 2010.)

from liability . . . by presenting, in a vacuum, the fine-print terms of its Merchant Processing Agreement." (*Id.* at 9.)

Translink has no need to "insulate itself from liability" if its agreement with Bacci does not impose any liability in the first place. In any event, the font size or density of a contract alone does not make a contract ambiguous. "In the absence of fraud, mistake, unconscionability, or like defenses, a person is bound by all provisions in a contract, including standard provisions colloquially described as 'boilerplate.' . . . There is no 'mere boilerplate' defense to a suit for breach of contract (or a defense to a defense to such a suit), . . . any more than there is a 'fine print' or 'I didn't read it' defense." *Dugan v. R.J. Corman R.R. Co.,* 344 F.3d 662, 667 (7th Cir. 2003) (citations omitted).

Because the MPA constitutes the agreement between the parties, and its terms plainly and unambiguously assign responsibility to ensure compliance with laws similar to FACTA to Bacci and not to Translink or the Bank, the breach of contract claim is dismissed.

**Breach of Implied Warranties**

Bacci next argues that Translink's failure to provide a FACTA-compliant terminal constitutes a breach of the implied warrant of merchantability and the implied warranty of fitness for a particular purpose. Both such warranties are addressed in the Uniform Commercial Code. The warranty of merchantability provides that "[u]nless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. The warranty of fitness for a particular purpose provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." 810 ILCS 5/2-315.

As a threshold matter, it should be noted that these warranties apply under the UCC only

9

to contracts for the sale of goods, not to services. Illinois uses the "predominant purpose" test to determine whether a sale is of goods or services. "Under this test, if the contract is predominantly for the sale of goods, with services being incidental thereto, the contract will be governed by [A]rticle 2. Conversely, if the contract is predominantly for services, with the sale of goods being incidental thereto, the contract will not fall within [A]rticle 2." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 352-53, 770 N.E.2d 177, 195 (2002). Plaintiff argues that the contract provides primarily for the sale of goods–software–and only incidentally for services, thus triggering the application of Article 2.

The court need not decide the question whether the transaction between Bacci and Translink is covered by Article 2. Assuming that it is, the MPA effectively disclaims the implied warranties. "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." 810 ILCS 5/2-316(2). The MPA states that: "BANK MAKES NO WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, CONCERNING ANY EQUIPMENT, OR OTHER SERVICE PROVIDED BY OTHERS AND, IN PARTICULAR, MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE." (MPA § 6.1.)

Bacci argues that this disclaimer is ineffective because it is not conspicuous: "[T]he reasonable person reviewing this boilerplate form would not be drawn to the attention of disclaimers of warranties. . . . [T]he text in the body of the Agreement is unreadable. . . . These pages show illegible, fine print that is exponentially smaller than average typeface. This print renders it all but impossible to determine which, if any, terms are set forth." (Pl.'s Resp. In Opp'n To Def.'s J. On the Pleadings at 14.) Whether a particular contract term is conspicuous is a determination to be made by the court–a determination the court should make "by asking if attention can reasonably by (sic) expected to be called to the term or clause." *R.O.W. Window Co. v. Allmetal, Inc.*, 367 Ill. App. 3d

749, 753, 856 N.E.2d 55, 59 (3d Dist. 2006). According to the UCC, "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." (*Id.* at 751, 753) (finding that a disclaimer was conspicuous when it "was the only text on the page to be listed in all capital letters").

The disclaimer at issue in this case meets this test. Though the entire MPA is printed in a small font, merely skimming the Agreement would draw attention to the disclaimer, printed in the same font size as the rest of the agreement but in all capital letters and on its own line. (MPA § 6.1.) The MPA itself is only two pages in its entirety. The court concludes that a "reasonable person" would have been able to discover the warranty disclaimer through a relatively cursory investigation of the Agreement.

Because the MPA effectively disclaims the warranties of merchantability and fitness for a particular purpose in accordance with the UCC, Bacci's claims alleging breaches of these warranties must fail.

## **CONCLUSION**

Defendant's motion for judgment on the pleadings [115] is granted. The following claims are dismissed with leave to amend: (1) breach of contract based on Translink's failure to provide Bacci with a FACTA-compliant credit card processing terminal [Count I] and (2) breach of the implied warranties or merchantability and fitness for a particular purpose [Count IV]. Plaintiff will have leave to amend Counts I and IV of their Complaint within 21 days; the court notes that any such complaint must include allegations not defeated by the court's ruling today.

ENTER:

Dated: September 24, 2010

_____
REBECCA R. PALLMEYER
United States District Judge