**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER D. SHURLAND,** individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 08 C 2259** |
| | ) | |
| **BACCI CAFÉ & PIZZERIA ON OGDEN, INC. and DOES 1–10,** | ) ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On August 11, 2007, Christopher D. Shurland ("Plaintiff") dined at Bacci Café and Pizzeria on Ogden, Inc., ("Bacci" or "Defendant") and received a receipt that displayed his entire credit card number and its expiration date. Plaintiff alleges that by displaying this information on the receipt, Bacci violated the requirements of the Fair and Accurate Credit Transactions Act ("FACTA"), an amendment to the Fair Credit Reporting Act ("FCRA"). This court certified a class of all those who had received a receipt from Bacci from December 5, 2006 (the effective date of FACTA) through November 2007. Based on records obtained from Bacci's credit card processor, Plaintiff determined that 6,359 transactions occurred in violation of FACTA during that period.

Plaintiff has since encountered difficulty in identifying the individual members of the class because Defendant's records of those 6,359 transactions are incomplete. Arguing that the absence of identifying information precludes class certification, Defendant has moved to decertify the class. For the reasons explained here, that motion is denied. Plaintiff has moved to approve class notice. As explained below, that motion is denied without prejudice to an appropriate proposal for the best practicable notice to class members.

<u>**FACTUAL HISTORY**</u>

On August 11, 2007, Plaintiff dined at Bacci and received a receipt that displayed all of the

digits of his credit card number and its expiration date. Plaintiff filed a class action lawsuit in the Circuit Court of Cook County on March 21, 2008, alleging that Bacci's issuance of the receipt violated the requirements of FACTA, which provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g). Plaintiff seeks statutory damages authorized by 15 U.S.C. § 1681n(a) of between $100 and $1,000 per violation. (Class Action Compl. ¶ 78.)

Plaintiff obtained records from Bacci's credit card processing provider, National Translink Corp., showing that there were 6,359 transactions that appear to have violated FACTA. (Mem. of Law in Supp. of Pl.'s Mot. for Class Cert. at 6.) Though Bacci contends it did not act willfully (a requirement for liability under FACTA), Bacci does not dispute that receipts it issued violated the five-digit truncation requirement of FACTA. *Shurland*, 259 F.R.D. at 157. Finding the requirements for class certification satisfied, this court on August 19, 2009, certified a class of "[a]ll persons to whom Defendant provided an electronically printed receipt at the point of a sale or transaction from December 5, 2006 through November 2007 displaying more than the last five digits of the purchaser's credit card or debit card number." *Id.* The court noted that at that time, "class discovery has not yet begun in this case, and Plaintiff will likely gain additional information in the form of records from third-party Defendant National Translink." *Shurland*, 259 F.R.D. at 160. National Translink did produce records to Plaintiff containing a redacted version of each credit card number processed by Defendant between December 4, 2006 and October 30, 2007. (Pl.'s Resp. Brief in Opp. to Def.'s Mot. for Decert. at 12.). Plaintiff initially asserted that these documents would enable him to identify class members by name and address, but in fact, he now reports, "the partial credit card numbers contained on the records could not be matched to names and addresses." (*Id.*) It appears that neither Defendant, Translink, nor the credit card companies involved in the transaction have possession of records that would allow identification of the individual members

2

of the class. (*Id.*)

## DISCUSSION

### I.     Motion to Decertify

As this court noted when initially certifying the class in this case, "class certification is 'inherently tentative.'" *Shurland*, 259 F.R.D. at 158 (quoting *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)).  Rule 23 explicitly authorizes the court to alter or amend a class certification order.  "Because the court must decide whether to certify a class early in the proceedings, it remains under a continuing obligation to review whether proceeding as a class action is appropriate, and may modify the class or vacate class certification pursuant to evidentiary developments arising during the course of litigation." *Ellis*, 217 F.R.D. at 419 (footnote omitted). Plaintiff "bears the burden of producing a record demonstrating the continued propriety of maintaining the class action." *Id.*  This court enjoys "broad discretion" in deciding whether Plaintiff has met its burden.  *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

In this motion, as in deciding the original motion for class certification, the court considers whether the tests of numerosity, commonality, typicality, and adequacy of representation are met. Fed. R. Civ. P. 23(a)(1)-(4).   If they are, the court considers whether common questions predominate and whether a class action is a superior method of adjudicating the claim.  Of particular concern here is this latter question, and specifically (a) the class members' interests in individually controlling their cases and (b) difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A), (D).

Although Defendant casts the argument in several different ways, the focus of its motion to decertify is on Plaintiff's inability to identify additional individual members of the class.  (Def.'s Mot. to Decert. at 2 ("To date, after more than two years of litigation, discovery and numerous depositions, no other class member has been located by identifiable information.")).   First,

Defendant argues that the class action device is no longer superior because the lack of identifiable class members renders the class unmanageable under Rule 23(b)(3)(D).  Second, Defendant argues that class certification without identification of individual class members contravenes "the class members' interests in individually controlling the prosecution or defense of separate actions" in violation of Rule 23(b)(3)(A), and more generally that certification in this situation violates due process.  Third, and closely related to the preceding argument, Defendant argues that publication notice alone is insufficient and violates due process, and asserts that no Rule 23(b)(3) class has been allowed to go forward relying solely on publication notice.  Defendant contends, further, that Plaintiff has not shown that the class is identifiable and ascertainable and that Plaintiff's inability to identify individual members of the class effectively defeats the requirement of numerosity.  FED. R. CIV. P. 23(a)(1).  Finally, Defendant argues that "questions of law or fact common to class members [do not] predominate over any questions affecting only individual members."  FED. R. CIV. P. 23(b)(3).  The court will address each of these arguments in turn.

### A.     Manageability

Defendant focuses, first, on the "manageability" prong of Rule 23(b)(3)(A), (Def.'s Mot. to Decert. at 6.), and urges that the difficulties in notifying class members require decertification. Indeed, difficulties in managing a class action are a factor the court must consider pursuant to FED. R. CIV. P. 23(b)(3)(D).  As this court noted in initially certifying the class, however, difficulties in identifying and notifying members of a large class do not, by themselves, require that class certification be denied.  *Shurland*, 259 F.R.D. at 160.  That calculus has not changed simply because Plaintiff has not yet identified individual members of the class.  As discussed below, publication is an acceptable method of notification in this case, and managing a class of approximately 6,300 subject to notice by publication is well within the competency of this court.

In general, the challenge of notifying class members need not defeat a finding of

4

manageability. Instead, manageability issues typically arise when a court will need to deal with myriad issues on an individualized basis. For example, manageability issues doomed class certification where plaintiff alleged that numerous defendants including Google were engaged in a scheme to infringe trademarks by registering confusingly similar domain names. *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 537 (N.D. Ill. 2008) ("[T]he possibility of hundreds if not thousands of individual hearings related to ownership, distinctiveness and the applicability of affirmative defenses, including managing probable discovery to be conducted prior to those hearings, precludes a finding that a class action is a superior method of adjudicating the trademark-related claims."). Defendants point to *Simer v. Ross*, 661 F.2d 655 (7th Cir. 1981), where the court reversed the certification of a class upon finding that it would be too difficult to identify individual class members. That finding, however, focused on the individualized factual findings that the court would need to make in order to determine whether an individual properly belonged to the class of people wrongly denied or discouraged from applying for financial assistance with utility bills. "The first problem is to identify those individuals who qualify for CIP assistance. . . . After completing this task, the court and parties would have to proceed with the Sisyphean task of identifying those individuals who not only qualified for CIP assistance, but also knew of the existence of the regulation and were discouraged from applying for assistance because of the shut-off notice requirement." 661 F.2d at 669.

No need for assessment of the mental state of class members is presented in this case. The court is satisfied that manageability problems are not insurmountable here.

**B.  Due Process Issues**

Defendant urges that because individual class members cannot be identified, "Due Process

for defendant and the class members will be thwarted."[1]   (Def.'s Mot. to Decert. at 7.)   As the

Seventh Circuit has explained, "in recognition of the potential divergence of interests within the

class, each class member in actions for money damages is entitled as a matter of due process to

personal notice and an opportunity to opt out of the class action. . . . Accordingly, Rule 23(c)(2)

guarantees those rights for each member of a class certified under Rule 23(b)(3)."   *Lemon v.*

*International Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000)

(citations omitted).   The due process inquiry in a Rule 23(b)(3) class, therefore, is whether the

requirements of Rule 23(c)(2) have been met. Rule 23(c)(2)(B) explains that for Rule 23(b)(3) class

actions such as this one, "the court must direct to class members the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified through

reasonable effort," and explain the details of the action to those members, including the opportunity

to opt out.   FED. R. CIV. P. 23(c)(2)(B).

Defendant argues that the Rule 23(c)(2) requirements cannot be met in this case because

---

[1]       Defendant also argues that it "will be deprived of its opportunity for cross examination at trial . . . and will likely be faced with a plaintiff asking for up to $6.3 million at trial without any opportunity to rebut plaintiff's case-in-chief . . . Defendant cannot face its challengers at pretrial proceedings or at trial." (Def.'s Mot. to Decert. at 7.)   Defendant cites no case law in support of this proposition, nor has Defendant explained what information it would seek from individual class members by way of cross examination.
Justice Scalia did recently grant a stay in a state class action judgment against tobacco companies on behalf of Louisiana smokers, in which plaintiffs alleged that the companies defrauded the class by "distort[ing] the entire body of public knowledge" about the effects of nicotine. *Philip Morris USA Inc. v. Scott*, No. 10A273,___S.Ct.___, 2010 WL 3724564 (Sept. 24, 2010) (Scalia, J.). Justice Scalia's ruling was  based in part on the fact that defendant was denied the opportunity to cross-examine members of the plaintiff class. *Id.*  at *1.  Because plaintiffs' fraud theory required a showing that plaintiffs had relied on the tobacco companies' representations about nicotine, Justice Scalia found that "individual plaintiffs who could not recover had they sued separately *can* recover only because their claims were aggregated with others' through the procedural device of the class action." *Id.*  Justice Scalia also pointed out that the due process concerns are less troublesome in class actions that are, unlike the *Philip Morris* case, governed by the Federal Rules. *Id.* at 2.  This court has concluded that Plaintiffs have met the Federal Rules' requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members" (*see infra* Part I.E), and the court, is therefore, not troubled by Defendant's in ability to cross-examine absentee plaintiff class members.

absent class members have not been identified. Defendant cites *Smith v. Shawnee Library System*, 60 F.3d 317 (7th Cir. 1995), where the Court of Appeals characterized reasonable notice and an opportunity to opt out as "an absolute requirement for a court to exercise jurisdiction over [23(b)(3)] class members." *Id.* at 321 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Defendant urges that because the class members are not identifiable, they cannot be provided with personal notice and an opportunity to opt out. (Def.'s Mot. To Decert. at 8.) Direct notice is indeed ideal, but the requirement of "personal notice" does not mean that each individual who is potentially a member of the class must receive actual notice of the class action. *Medina v. Manufacturer's & Traders Trust Co.*, No. 04 C 2175, 2004 WL 3119019, at * 3 (N.D. Ill. Dec. 14, 2004) (Rule 23(b)(3) class) ("This [best notice practicable] standard can be satisfied even though a particular class member never receives actual notice.").

Defendant insists that notice by publication is unprecedented in class actions certified under Federal Rule of Civil Procedure 23(b)(3). (Def.'s Mot. to Decert. at 9.) In the court's understanding, however, case authority does contemplate notice by publication alone in 23(b)(3) class actions where individual class members cannot be identified. The court is called upon to ensure that each class member receives "the best practicable notice that is: 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *F.C.V., Inc. v. Sterling Nat. Bank*, 652 F.Supp.2d 928, 944 (N.D. Ill. 2009) (Rule 23(b)(3) class) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)). The court nevertheless retains "broad discretion in fashioning the notice program in each particular case," *Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2001) (Rule 23(b)(3) class), "subject only to the broad 'reasonableness' standards imposed by due process." *Simer*, 661 F.2d at 686 (Swygert, J., dissenting) (Rule 23(b)(3) class) (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)).

Where, as in this case, individual notice is not possible, other methods of contacting the class members may be utilized. As the Supreme Court has explained: "This Court has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 316 (1950) (discussing "best notice practicable" in the context of a common trust fund settlement). *Mullane* stands for the proposition that "notice by publication is not enough with respect to a person *whose name and address are known or very easily ascertainable* and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962) (emphasis added). Though these cases predate the current version of Rule 23, the drafters of the Rule intended to incorporate the due process standards *Mullane* and *Schroeder* discussed. *See Eisen*, 417 U.S. at 173-74.

In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law. "When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Rule 23(b)(3) class) ("[Individual] notice is preferable to newspaper or other collective notice but it was impossible here because [Defendant] has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter."). *See also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) (Rule 23(b)(3) class) ("While individual notice, where reasonably possible, is required, when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."). There is, in short, no "single formula" that describes what effort is necessary to contact

8

and notify members of a Rule 23(b)(3) class; instead, the "type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1097-98 (5th Cir. 1977) (Rule 23(b)(3) class).

Courts have become increasingly willing to order notice through a variety of mechanisms–including demographically targeted publication–designed to reach unidentified or unidentifiable class members. In *Mirfasihi*, for example, the court noted that "[t]he World Wide Web is an increasingly important method of communication, and, of particular pertinence here, an increasingly important substitute for newspapers. Although [Defendant] did not post a notice on its own website, a firm that was hired to administer the settlement maintained a website with details of the case, and so far as appears that was an acceptable substitute." 356 F.3d at 786. In another case, where class members could not be individually identified because the identities of pharmaceutical purchasers are confidential, plaintiff hired a settlement administrator to take steps including "design[ing] and develop[ing] a website for class members to review and access information about the settlement [and publishing] [s]ummary notice of the proposed settlement . . . over a period of three months beginning in August 2001 in selected publications across the country." *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 526 (3d. Cir. 2004) (Rule 23(b)(3) class). The court noted that the selected publications were particularly popular among older readers, an appropriate choice where the drug at issue in the litigation was most often used by persons over 50 years old. *Id.* In yet another example of specialized notice, albeit in a Rule 23(b)(2) class, to reach Allstate policyholders who were members of the plaintiff class based on their race, efforts "included publication in a variety of national magazines and newspapers, including those which target African-American and Hispanic and Latino readership. The notice was also advertised on the internet in both English and Spanish." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 278 (W.D. Tex. 2007).

9

In this case, decertifying the class because class members cannot be identified by name would create a perverse incentive–it would reward a class action defendant for its failure to maintain customer records. Plaintiff notes that the difficulty in identifying individual members of this class stems in part from Defendant's destruction of its records. (Pl.'s Resp. in Opp. to Def.'s Mot. to Decert. at 3, 6, 11.) Defendant objects, noting that there is no basis for the conclusion that its record-keeping violated any regulatory standard. (Def.'s Reply in Supp. of Mot. to Decert. at 3.) The absence of any impropriety aside, whether a class action is appropriate cannot be a function of Bacci's record-keeping practices. As the Seventh Circuit noted (albeit in a case where defendants' liability was apparent), "[t]he difficulties defendants complain of are of their own making. . . . Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify. . . . Class actions cannot be defeated by destroying records." *Appleton Electric Co. v. Advance-United Expressways*, 494 F.2d 126, 135, 139 (7th Cir. 1974).

This court must indeed carefully assess the sufficiency of Plaintiff's proposed notice; for purposes of the due process assessment, however, the court is satisfied that notice by publication may be sufficient when individual class members cannot be identified.

## C. Ascertaining and Identifying the Class Members

Defendant contends the absence of records identifying the class members by name requires decertification of the class for another reason: that the class itself cannot be ascertained and identified. (Def.'s Mot. to Decert. at 12.) Again, the court disagrees. In *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *Simer*, 661 F.2d at 669), cited by Defendant in support of this argument, the Seventh Circuit observed that a class action proponent must show "that the class is indeed identifiable as a class." But in that case, in which the plaintiff challenged the manufacturer's failure to disclose the presence of saccharin in fountain-drink Diet Coke, the

10

proposed class included anyone who had purchased the drink, whether or not he or she had been deceived about saccharin. Such a definition was overinclusive, the court concluded: "Membership in Oshana's proposed class required only the purchase of a fountain Diet Coke from March 12, 1999, forward. Such a class could include millions who were not deceived and thus have no grievance under the [Illinois Consumer Fraud and Deceptive Practices Act]. Some people may have bought fountain Diet Coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin." *Oshana*, 472 F.3d at 514. Such difficult factual questions are not present in the instant case–the only factual inquiry is whether *Defendant's* violations of FACTA were willful, not what the Plaintiff class members believed or relied on.

Notably, in one of the cases Defendant cites for the proposition that the class must be ascertainable, the court approved class certification despite the fact that determining its members required a more complicated factual assessment than what is called for here. The class at issue in that case consisted of

> persons or entities who (1) received, on a telephone facsimile machine, a fax transmitted on February 23 or March 29, 2005, that advertised mortgage refinancing or debt consolidation loan programs and that instructed the recipient to "Call the experts for a free analysis" at "1-877-907-SAVE" or "1-877-489-8777" or "1-410-349-4220," (2) owned and/or paid for some portion of the operation of the machine on which the fax was received, and (3) had not previously consented to receiving such advertisements addresses both of these deficiencies.

*G.M. Sign*, *Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950, at *5 (N.D. Ill. Aug. 20, 2008). The court found this detailed class definition satisfactory because it contained "precise, objective criteria that would be within the personal knowledge of the potential class member." *Id.*

As other courts in this district have observed, "a class is sufficiently definite if its members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Hinman v. M and M Rental Center, Inc.,* 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (citations omitted). Thus, the court should deny class certification where there is "simply no

11

reasonable way of identifying potential class members," but "definiteness does not require plaintiffs to identify specific class members." *Saf-T-Gard Intern., Inc., v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008). In the case before this court, membership in the class can indeed be "ascertained by reference to objective criteria and . . . defined by reference to defendant's conduct." *Hinman*, 545 F. Supp. 2d at 806. The required analysis–determining only whether the purported class member made a purchase from Bacci within the set dates–is a straightforward one. Although Defendant's own records are not as complete as Defendant itself insists they should be, there is a log listing the receipts issued during the period in which Bacci was not in compliance with FACTA's truncation requirement. The log includes partial credit card information for each transaction, the date it occurred, and the amount of the transaction. This information can, as Plaintiff explains, be used to verify whether any individual who responds to class notice is in fact a member of the class. The court concludes the class is sufficiently definite and overrules Defendant's objection on this basis.

### D. Numerosity

Defendant's challenge to the numerosity finding requires little discussion. Plaintiff's inability to specifically identify the class members does not alter the determination that more than 6,000 of them exist. As noted in the opinion originally certifying the class, "[t]he case law is clear . . . that a present lack of identifying details such as contact information or the names of class members need not defeat class certification." *Shurland*, 259 F.R.D. at 160. And, for reasons explained there, it is reasonable to conclude that "the number of violations corresponds roughly to the number of individual class members." *Shurland*, 259 F.R.D. at 158. This objection is overruled.

### E. Predominance Of Common Issues

Finally, Defendant argues that the class should be decertified because it fails on the predominance prong–that is, the requirement that "questions of law or fact common to class

members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This court earlier found the predominance requirement satisfied because "the question of whether Defendant acted willfully is central both to Plaintiff's individual claim and to the claims of the class as a whole." *Shurland*, 259 F.R.D. at 159. Again, nothing has changed since the court made this determination except for the difficulties in identifying specific, individual members of the class. It is simply not true that, as Defendant now suggests, there is "only one proposed class member." (Def.'s Mot. to Decert. at 14.) The class remains one having more than 6,300 potential members despite difficulties in identifying them.

II.     **Motion to Approve Class Notice**

As discussed above, notice by publication alone may be permissible when it is the best notice practicable. Plaintiff asks this court to approve a one-time publication of class notice in the Chicago Sun-Times and publication on Class Counsel's website.

In proceeding with a Rule 23(b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). The Seventh Circuit has said that "[w]hen individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004). In that case, however, the class consisted of 1.4 million people located across the United States. Here, many class members likely reside nearby Bacci's Berwyn location, so a variety of other means and methods for notice are available. First, in addition to one-time publication in the *Chicago Sun-Times*, the court assumes Plaintiff could publish notice in local publications that serve the Berwyn area. See *Santos v. Camacho*, Nos. 04-00006, 04-00038, 04-00049, 2008 WL 1699448, at *17 (D. Guam April 10, 2008) (finding publication in local newspapers adequate due to the "strong concentration of class members in such a small geographic area as Guam"). The court also suggests posting the class notice at Bacci, and posting a link to the class notice on Bacci's website. *See, e.g., Lucas v. Kmart Corp.*, 234 F.R.D. 688, 696 (D.Colo. 2006).

13

The language of Plaintiff's proposed notice appears to be adequate, however. Rule 23(c)(2)(B) requires that the class notice for a Rule 23(b)(3) class "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Defendant makes only one specific proposal for revision to the notice form, suggesting that it contain a statement that "Bacci Café & Pizzeria denies that it engaged in any wrongdoing and denies that it has any liability to any class members" in the paragraph headed, "What Is This Case About." (Def.'s Resp. in Opp'n To Pl.'s Mot. to Approve Class Notice at 2.) Plaintiff does not object to that additional language (Pl.'s Reply in Supp. of App. of Class Notice at 14), and the court directs that it be adopted.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion to Decertify [144] is denied. Plaintiff's motion to approve class notice [137] is also denied as to the plan of notice, but approved as to the content of the notice. Plaintiff is directed, within 14 days, to propose a new plan for notifying the class, consistent with the recommendations expressed in this opinion.

ENTER:

Dated: November 2, 2010

_____
REBECCA R. PALLMEYER
United States District Judge

15