UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER D. SHURLAND,** individually and as the representative of the certified class, | ) ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) No. 08 C 2259 |
| | ) |
| **BACCI CAFÉ & PIZZERIA ON OGDEN, INC.,** | ) Judge Rebecca R. Pallmeyer ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

In August 2007, Plaintiff Christopher D. Shurland ate at Defendant Bacci Café & Pizzeria on Ogden, Inc. ("Bacci"), and received from Bacci a credit card receipt that displayed all of the digits of his credit card number, and its expiration date. Shurland filed this action on behalf of himself a3nd a class of customers, alleging a violation of the Fair and Accurate Credit Transactions Act, ("FACTA"), which prohibits businesses from printing non-truncated credit card numbers on the receipts issued to customers. 15 U.S.C. § 1681c(g). Shurland now moves for summary judgment against Bacci and an award of statutory damages for 6,359 willful violations of FACTA. 15 U.S.C. § 1681n(a)(1)(A).

For a willful violation of the relevant provisions of FACTA, the statute provides for actual damages or statutory damages of between $100 and $1,000 per occurrence. Plaintiff Shurland argues that because Bacci received a billing statement from its third-party credit card processor alerting it to FACTA's truncation requirement, and because that third party also contacted Bacci to advise of the truncation requirement, Bacci's violation of FACTA was willful. Bacci asserts that it was not aware of the FACTA truncation requirement, and notes that it had received a replacement credit card terminal shortly before FACTA went into effect and believed that machine was compliant with all applicable laws. Accordingly, Bacci denies that its conduct was willful. For the reasons

explained herein, Plaintiff's motion for summary judgment is denied.

## BACKGROUND

Defendant Bacci is an Illinois corporation located in Berwyn, Illinois. (Pl.'s 56.1(a) ¶ 2.) This case concerns Bacci's compliance with the FACTA truncation regulations that went into effect on December 5, 2006. The following facts are uncontested: On August 11, 2007, Plaintiff Christopher D. Shurland received a receipt displaying his entire credit card number and its expiration date. (Pl.'s 56.1(a) ¶ 31.) At some point during October 2007, an unidentified patron of Bacci complained to one of Bacci's employees that there were too many numbers printed on that customer's credit card receipt. (*Id.* ¶ 32.) After receiving this complaint, another Bacci employee contacted Bacci's credit card processor for assistance, but was unable to get the truncation function to work properly. (*Id.* ¶ 33.) Defendant thereafter truncated the numbers manually by crossing them out until it acquired a new credit card machine and processing service. (*Id.* ¶ 34.) Between the Act's effective date and October 30, 2007, when Defendant stopped issuing non-truncated receipts, Defendant issued 6,359 receipts that violated the truncation requirement of FACTA. *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 142 (N.D. Ill. 2010).

The issue in this motion for summary judgment is whether these violations were willful. Assessment of this question requires consideration of events that preceded the FACTA violations, and circumstances relating to Defendant's knowledge or recklessness (or lack thereof) concerning FACTA's requirements. Vincent DiDiana and his wife, Chiara DiDiana, purchased Bacci Café & Pizzeria on Ogden in 1998. (Pl.'s 56.1(a) ¶ 5.) In 2004, Vincent DiDiana purchased another restaurant in Melrose Park, known as Bacci Pizzeria of Melrose Park. (*Id.* ¶ 6.) That Melrose Park restaurant had two credit card processing machines, and DiDiana transferred one of those, a Hypercom T7P, to the Berwyn location. (*Id.* ¶¶ 7-9.) The Hypercom T7P was the sole credit card processing machine Defendant used at the Berwyn restaurant from May 2004 until mid-July 2006. (*Id.* ¶ 10; Def.'s Resp. ¶ 10.) Before using it, Bacci staff contacted National Translink Corp., a

credit card processing company, to activate processing services. (*Id.* ¶¶ 12, 14.) Plaintiff notes that the "Merchant Processing Agreement" that Bacci entered into on May 11, 2004 contained the following provision:

> 1.15 MERCHANT warrants and agrees that MERCHANT shall fully comply with all federal, state, and local laws, rules and regulations as amended from time to time, including the Federal Truth-in-Lending Act and Regulation Z of the Board of Governors of the Federal Reserve System.

(*Id.* ¶¶ 15, 16.) Defendant admits that it entered into a Merchant Processing Agreement with Provident Bank and Translink, but Chiara DiDiana, who completed the application, testified that she recognized only "her signatures and the handwriting for the date, phone number, hours of the day, and her Social Security number." (Def.'s Resp. ¶ 15.) Chiara DiDiana testified that she "did not recall the other handwriting on the application." In addition, Defendant points out that the provision in the Merchant Processing Agreement cited by Plaintiff appears in a "very small [font] and on the back-side of the Merchant Processing Application." (*Id.* ¶ 16.)

Pursuant to its agreement with Bacci, Translink provided Bacci with technical and customer service support and coordinated programming of the credit card processing terminal and credit card approvals. (Pl.'s 56.1(a) ¶¶ 17, 18.) Translink sent monthly billing statements reflecting its clients' credit card transactions to each address in its database, which included Bacci's address. (*Id.* ¶¶ 19, 21.) Included in the March 2005 statement was a notice that read:

> IMPORTANT NOTICE: To be in compliance with state, federal, and Visa/MasterCard regulations all merchants must have their customer receipt print only the last 4 digits of the credit card number. If your receipt does not "truncate" the credit card number call 1-877-677-7201 as soon as possible.

(*Id.* ¶ 20.) Defendant notes that this entire notice took up only one quarter-inch of text on the monthly statement from Translink. (Def.'s Resp. ¶ 20.) When Chiara DiDiana received those billing statements she would "look and see how much money [Translink] was taking out and that's it." (*Id.* ¶ 23.) Thus, according to Bacci, Chiara did "not really" review that March 2005 billing statement, did not recall seeing the notice regarding truncation, and did not know that the law imposed this

restriction. (*Id.* ¶¶ 19, 20.) In any event, Bacci asserts, "[i]t has not been established that Bacci received the March 2005 billing statement" and Translink "could not verify that every customer received this notice." (*Id.* ¶¶ 21, 22.)

As additional evidence that Bacci was indeed aware of the FACTA requirements, Plaintiff asserts that in 2006, Translink compiled a list of approximately 200 customers that it believed might have "truncation issues" and called all of the customers on that list, which included Defendant. (Pl.'s 56.1(a) ¶ 24, citing Deposition of Translink employee Douglas Porch, Pl.'s Ex. E at 90-92; List of Customers with Truncation Issues, Pl.'s Am Ex. E at 62; Deposition of Translink Executive Vice President James Tracy, Pl.'s Ex. D at 32.) Defendant "denies that there is undisputed evidence that National Translink called all of those customers, including Bacci." (Def.'s Resp. ¶ 24.) Defendant notes that the list upon which the calls were based "does not show any notation of contact, and Bacci's name is not crossed off." (*Id.*) A portion of this list is included with Plaintiff's exhibits, and while many names on the list appear to be crossed off, it is indeed difficult to determine whether Bacci's name is among those crossed off, or what other notations that appear on the list may mean. (Pl.'s Am. Ex. E at 62.) The individual responsible for making these calls conceded that there were people he was unable to reach and that "he has no specific recollections of having had any conversations with Bacci regarding truncating of credit card numbers." (Def.'s Resp. ¶ 24.)

Translink personnel also contacted customers who used the same Hypercom terminal model that Bacci used, to ask whether they were properly truncating the credit card information, and give them a telephone number if they needed help in doing so. (Pl.'s 56.1(a) ¶ 25.) (It is unclear whether the list of Hypercom customers contacted by Translink is the same as the list of customers with "truncation issues" contacted by Translink. Plaintiff does not reference an actual list of Hypercom customers in its fact statement, while Defendant references the same list discussed previously. (Pl.'s 56.1(a) ¶ 25; Def.'s Resp. ¶ 25.)) No one from Translink has verified actual contact with Bacci, Defendant points out, nor does the single list of these companies that appears

in the record bear any notation reflecting that Bacci had been contacted. (Def.'s Resp. ¶ 25.) Plaintiff asserts that in April 2006, Translink employee Douglas Porch made notations reflecting contact with Defendant about the truncation requirement, but Defendant contends that these notes only demonstrate Porch's contact with the processing center, Card Systems, arranging for the download of truncation software to Bacci. (Pl.'s 56.1(a) ¶ 26; Def.'s Resp. ¶ 26.) Plaintiff contends that additional handwritten notes dated July 13, 2006 refer to truncation issues with Defendant, but Defendant claims that these notes too reflect contact with Card Systems, not with Bacci. (Pl.'s 56.1(a) ¶ 28; Def.'s Resp. ¶ 28.) The court is unable, from its own review of the handwritten notes, to determine whether Porch made contact with Bacci itself, with Card Systems, or with another party. (Pl.'s Am. Ex. D at 49-50.)

In addition to its response to Plaintiff's statement of material facts, Bacci has submitted statements of additional facts, as permitted under Local Rule 56.1(b)(3)(C). Because Plaintiff has not replied to these, they are deemed admitted. L.R. 56.1. According to this additional material, Chiara DiDiana, the co-owner of Defendant's restaurant, only "pay[s] the bills," and does not have other responsibilities. (Def.'s Supp. ¶ 35.) She did complete the application for a credit card processing machine from Translink, but Bacci asserts that she "only filled in a few portions of the application." (*Id.* ¶ 36.) Chiara DiDiana testified that she never spoke with anyone from Translink regarding truncation issues, and Defendant claims that "no representative or employee of Bacci recalled receiving any notification of the need to truncate credit card numbers on customer credit card receipts." (*Id.* ¶¶ 39-41.)

Bacci's owners do not belong to any business associations, do not read any business journals or other commercial journals, and had not read anything provided by Visa or Mastercard concerning truncation. (*Id.* ¶ 43.) On July 14, 2006, Defendant asserts, someone at Bacci (Defendant has not provided details) complained to Translink that its credit card processing terminal had "sticky buttons," and Translink sent Defendant a replacement terminal that it had programmed.

(*Id.* ¶¶ 52, 53.) Before sending out a new credit card terminal, also on July 14, 2006, Translink coordinated with Card Systems (identified in this record only as the "processing center") to program the terminal with files that included "truncation information." (*Id.* ¶ 53.) Vincent DiDiana "believed that the replacement credit card terminal would have met all of the requirements found in all laws, rules and regulations governing the use of credit card terminals." (*Id.* ¶ 55.)

The court has previously issued several opinions in this case, and previously denied Defendant's motion for summary judgment in its favor on the issue of whether the FACTA violation was willful. *Shurland v. Bacci Café & Pizzeria on Ogden Inc.*, 259 F.R.D. 151, 157 (N.D. Ill. 2009). The court noted that "Plaintiff has presented evidence in the form of deposition testimony and business records sufficient to support a reasonable inference that Defendant received notice of FACTA's truncation requirements both in its monthly billing statement and via phone calls from National Translink employees." *Id.* The court concluded, as a result, that "Plaintiff has demonstrated genuine issues of material fact as to when Defendant obtained knowledge of FACTA's truncation requirements and whether it acted willfully in disregarding those requirements." *Id.* Plaintiff now asks the court to go one step further, and find that there are no disputes of fact and that Defendant's 6,359 FACTA violations were willful.

## **DISCUSSION**

Summary judgment will be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must draw all reasonable inferences and construe all facts in favor of the nonmoving party. *Bourke v. Conger*, 639 F.3d 344, 346-47 (7th Cir. 2011). In deciding a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any

receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g).  The penalty for "[a]ny person who willfully fails to comply" with the truncation requirement of FACTA is an award of "damages of not less that $100 and not more than $1,000."  15 U.S.C. § 1681n(a)(1)(A).  By contrast, if the conduct is not willful, Plaintiff is entitled to actual damages only.  15 U.S.C. § 1681o.  In examining § 1681n(a), the Supreme Court concluded that willfulness in this context "cover[s] not only knowing violations of [the] standard, but reckless ones as well."  *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2007).  The court went on to explain that while "the term recklessness is not self-defining, the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* at 68 (citations and quotations omitted).  Thus, recklessness for FACTA purposes is "something more than negligence but less than knowledge of the law's requirements."  *Kubas v. Standard Parking Corp.*, 594 F. Supp. 2d 1029, 1032 (N.D. Ill. 2009) (quoting *Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719, 726 (7th Cir. 2008)).

In seeking summary judgment on this issue, Plaintiff acknowledges that "the issue of wilfulness is generally a question of fact for the jury."  (Pl.'s Br. at 10.)  Plaintiff urges that summary judgment is nevertheless appropriate here because in this case, unlike others, there is "undisputed evidence that the Defendant received actual written notice of FACTA's truncation requirement . . . ." (*Id.*)  Plaintiff refers specifically to the evidence that Defendant "failed to review its monthly statements," "failed to apprise its employees of their legal obligations," and "failed to take any other measures to ensure compliance with the requirements of FACTA."  (*Id.* at 11.)

The parties agree that no FACTA class action alleging a willful failure to truncate credit card numbers has been decided in favor of a plaintiff at the summary judgment stage.  In *Hammer v. JP's Southwestern Foods, L.L.C.*, 739 F. Supp. 2d 1155 (W.D. Mo. 2010), the court denied summary judgment in favor of plaintiff where the defendant had received nine notices from its credit

7

card processing company similar to the ones at issue here. *Id.* at 1166-68. Defendant in that case had also received notice from customers that it was in violation of FACTA prior to May 15, 2007, but did not come into compliance until December 5, 2007, and had, at some point prior to August 2007, asked for a quote from its computer vendor of the cost to fix the truncation issue. *Id.* The court nevertheless denied summary judgment, noting that questions of material fact existed as to whether defendant's owner was aware of the FACTA requirements. *Id.* As Plaintiff here points out, that case hinged, in part, on whether defendant could be liable for the failure of a third party who received and paid the invoices containing the notices for defendant, but the court did not say that it would have found willfulness if that third party's knowledge were imputed to defendant. *Id.*

In *Cowley v. Burger King Corp.*, 2008 U.S. Dist. LEXIS 87852, No. 07-21772-CIV-MORENO/TORRES (S.D. Fla. May 23, 2008), a restaurant patron sued Burger King for violating FACTA. When Burger King ran a systemwide software update of its credit card processing terminals, it discovered that 76 out of 2,879 were offline during the installation process of software designed to implement the FACTA requirements, and therefore kept printing expiration dates on receipts in violation of FACTA. *Id.* at *4. Plaintiff later used a credit card at one of the Burger King locations whose terminals was offline and received a receipt that did not comply with FACTA. In considering plaintiff's motion for summary judgment in that case, the court noted that Burger King was aware of FACTA's requirements, yet still provided the plaintiff with a receipt that violated those requirements. *Id.* at *11. The court nonetheless denied summary judgment. No court has found willfulness as a matter of law in the FACTA context, the court observed; "[t]he absence of such authority compellingly shows that whether or not Defendant knowingly and intentionally violated the statute is for the jury to decide, even in a case where, as here, there may be strong evidence from which the jury could reach that conclusion." *Id.* at *14. The court was unwilling to conclude that Burger King had knowledge that its terminals were printing receipts that violated FACTA, and also declined to find Burger King's actions reckless, noting that "[a] reasonable jury could certainly find

that Defendant's actions were merely negligent, as opposed to reckless." *Id.* at *17.

Similarly, in *Soualian v. International Coffee & Tea, LLC*, 2008 WL 410618, No. CV 07-0502-RGK (JCx) (C.D. Cal. Feb. 9, 2008), the court examined whether defendant, a retail coffee chain, should be granted summary judgment on the issue of whether it willfully violated FACTA. The record demonstrated that defendant had entered into a contract with Fifth Third Bank, its credit card processor, similar to the one that Defendant Bacci signed in this case. Specifically, defendant agreed to comply with all the rules issued by credit card companies; to comply with all laws and regulations; and to review all reports and invoices from Fifth Third Bank. *Id.* at *1. In 2005, Visa issued rules stating that only the last four digits of a credit card number should be printed on a customer's receipt, but did not explain that this was pursuant to federal law. *Id.* In October 2006, defendant received a monthly billing statement that included the following:

> ALERT! Current laws prohibit printing the expiration date or more than the last four digits of a card number on a printed customer receipt, which may result in statutory fines or penalties. Please review the receipts you provide to your customers for compliance. Call 800-278-6888 or your RM with any questions.

*Id.* In addition, one of defendant's officials had handwritten "okay" on the same page as that notice. *Id.* The court concluded that this evidence, which is similar to the evidence offered in this case, was "weak" support for a finding of a willful FACTA violation on defendant's part, albeit sufficient to raise a triable issue of fact. *Id.* at *4.

Certainly, *Hammer*, *Cowley*, and *Soualian*, are not dispositive. All three cases, however, do involve situations where the defendants unquestionably knew about the requirements of FACTA yet failed to comply with the statute. In all three cases, and in all other cases to have considered the issue, the courts concluded that the issue of willfulness must go before a jury.

The undisputed facts here demonstrate that Defendant entered into a Merchant Processing Agreement in May 2004 that required it to comply with all laws and regulations. In addition, the March 2005 statement apparently sent from Translink to Bacci included a notice explaining the

requirements of FACTA. Bacci's name also appears on a list of clients that Translink intended to call regarding FACTA compliance, and the record shows that Translink did place calls to those businesses. In July 2006, Defendant received a new credit card processing terminal from Translink to replace one that had "sticky buttons." On the other hand, Defendant disputes that any of its representatives actually read the notice on the credit card statement, and contends that none of its employees ever spoke to anyone at Translink regarding FACTA compliance. Defendant also claims that it believed whatever terminal it received from Translink would be compliant with all applicable laws.

Plaintiff contends that Defendant's lack of knowledge or failure to read notes is sufficient by itself to establish willfulness. The cases Plaintiff cites for the proposition that a party cannot "avoid responsibility for its actions or inactions by failing or refusing to read notices, contract provisions and the like" (Pl.'s Br. at 9), are readily distinguishable, however. For example, in *Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753 (7th Cir. 1992), the Seventh Circuit concluded that a contract's terms were binding despite being written in German, because "[m]ere ignorance will not relieve a party of her obligations . . . ." *Id.* at 757. That case, however, was examining whether the terms of a signed contract were binding, and did not even discuss any willfulness or recklessness standard. Similarly, *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989), in which the court concluded that poor eyesight and a rush to catch a plane did not excuse a contract's forum selection clause, did not discuss the standard applicable to this case. *Id.* at 1292. *Ho v. Donovan*, 569 F.3d 677 (7th Cir. 2009), and several other cases cited by Plaintiff address the appropriate form of notice under the due process clause—also not at issue here. Plaintiff submits no cases discussing a willfulness or reckless standard that support its contention Defendant should be liable regardless of its understanding of the law.

To the contrary, the FACTA case law suggests that a defendant's understanding of the law is indeed relevant. In *Claffey v. River Oaks Hyundai, Inc.*, 494 F. Supp. 2d 976 (N.D. Ill. 2007),

Judge Kennelly explained, albeit in the context of a Fair Credit Reporting Act claim, that "the 'objective' standard for recklessness that the [*Safeco*] Court adopted does not render irrelevant evidence of the party's actual understanding of the law. . . . Evidence of a party's actions and intentions is unquestionably relevant in determining whether that standard is met in a particular case." *Id.* at 978-79. But, of course, on summary judgment "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne*, 337 F.3d at 770. That is exactly what is required in this case—a factual determination as to whether Defendant's actions were merely negligent, or were reckless or otherwise willful. That determination must be made by a jury. Plaintiff's motion for summary judgment is therefore denied.

## CONCLUSION

Plaintiff's motion for summary judgment [181] is denied.

ENTER:

Dated: August 30, 2011

_____
REBECCA R. PALLMEYER
United States District Judge